# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

TRACEY DAMRAU, *et al.*,

        Plaintiffs,

   v.

COLIBRI GROUP, INC.

        Defendant.

Case No. 4:24-cv-01441-SEP

**JURY TRIAL DEMANDED**

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Dated: December 19, 2024

*/s IJay Palansky*_____
IJay Palansky (*pro hac vice*)
ipalansky@atllp.com
ARMSTRONG TEASDALE LLP
4642 S. Ulster Street, Suite 800
Denver, Colorado 80237
(720) 200-0676

Paul Croker (Bar #57000)
Nick Slovikoski (Bar #73019)
pcroker@atllp.com
nslovikoski@atllp.com
ARMSTRONG TEASDALE LLP
2345 Grand Blvd., Suite 1500
Kansas City, Missouri 64108
Telephone: 816.221.3420
Fax: 816.221.0786

COUNSEL FOR COLIBRI GROUP, LLC

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ II

BACKGROUND .................................................................................................................. 3

    A.      The Websites ............................................................................................... 3

    B.      Defendant .................................................................................................... 3

    C.      The Metal Pixel and TikTok Pixels ............................................................ 4

    D.      Plaintiffs ...................................................................................................... 4

    E.      The Claim and Proposed Classes ............................................................... 5

ARGUMENT ....................................................................................................................... 5

    I.      Colibri Group Is The Wrong Defendant. ................................................... 5

    II.     The Complaint's Attempt To Plead A VPPA Claim Fails In Multiple Ways. ......................................................................................................... 7

           A.      The VPPA's Text And Legislative History Indicate Video Tape Service Providers Are Limited To Providers Of Pre-Recorded Materials "Similar" To Movies, Not Educational Videos Like Those On The Websites. ................................................................ 8

           B.      Even If The Meta and TikTok Pixels Allow Identification Of Plaintiffs' Facebook Pages Or TikTok Accounts, The VPPA Claim Should Be Dismissed Because The Complaint Fails To Allege Those Pages Contain Plaintiffs' Personal Information. .................. 11

           C.      The Disclosed Information Is Not PII Because It Does Not Identify "Specific Video Materials or Services," As Required By The Statute. ........................................................................................ 12

           D.      Plaintiff Oshea Does Not Assert A Claim That Her PII Was Disclosed To Meta. .................................................................................. 13

CONCLUSION ................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Aldana v. Gamestop, Inc.*,
   No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ......................................10

*Bell v. Emp. Connection*,
   No. 4:23-cv-00267-SEP, 2024 WL 1253820 (E.D. Mo. Mar. 25, 2024)
   (Pitlyk, J.)..................................................................................................................................5

*Brands Int'l Corp. v. Reach Cos., LLC*,
   103 F.4th 501 (8th Cir. 2024) .................................................................................................10

*Doe 1631 v. Quest Diagnostics, Inc.*,
   395 S.W.3d 8 (Mo. banc 2013)..................................................................................................7

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ..............................................................................................10, 12

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir. 2015) ..............................................................................................1, 7

*State ex rel. Ford Motor Co. v. Bacon*,
   63 S.W.3d 641 (Mo. banc 2002).................................................................................................6

*Ghanaat v. Numerade Labs*,
   689 F. Supp. 3d 714 (N.D. Cal. 2023) .....................................................................................11

*Gonzalez v. Central Elec. Co-op, Inc.*,
   Civ. Nos. 08–6236–HO, 08–6240–HO, 2009 WL 3415235 (D. Or. Oct. 15,
   2009) ........................................................................................................................................13

*Heerde v. Learfield Commc'ns, LLC*,
   No. 2:23-CV-04493-FLA, 2024 WL 3573874 (C.D. Cal. July 19, 2024)...............................11

*In re Hulu Priv. Litig.*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015) .....................................................................................12

*Martin v. Meredith Corp.*,
   657 F. Supp. 3d 277 (S.D.N.Y. 2023).......................................................................................12

*Martinez v. D2C, LLC*,
   No. 23-21394-CIV, 2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) ..........................................12

*Mid-Mo. Tel. Co. v. Alma Tel. Co.*,
   18 S.W.3d 578 (Mo. App. W.D. 2000).......................................................................................6

*Mollett v. Netflix, Inc.*,
 795 F.3d 1062 (9th Cir. 2015) ...................................................................................................8

*In re Nickelodeon Consumer Privacy Litig.*,
 827 F.3d 262 (3d Cir. 2016) ................................................................................................1, 12

*U.S., ex rel. Polansky v. Exec. Health Res., Inc.*,
 599 U.S. 419 (2023) .................................................................................................................10

*SAS Inst., Inc. v. Iancu*,
 584 U.S. 357 (2018) .................................................................................................................10

*Shannon v. GfK Custom Rsch. LLC*,
 No. 4:13-CV-682 CAS, 2013 WL 4829220 (E.D. Mo. Sept. 10, 2013) ...................................6

*Solomon v. Flipps Media, Inc.*,
 No. 22-CV-5508 (JMA) (JMW), 2023 WL 6390055 (E.D.N.Y. Sept. 30,
 2023) ........................................................................................................................................11

*Sprint Spectrum L.P. v. AT&T Commc'ns, Inc.*,
 No. 00–0973–CV–W–5, 2001 WL 36143293 (W.D. Mo. Feb. 8, 2001) ..................................5

*United States v. Bestfoods*,
 524 U.S. 51 (1998) ....................................................................................................................6

*United States v. Stanko*,
 491 F.3d 408 (8th Cir. 2007) ....................................................................................................9

*Weitz Co. v. MH Washington*,
 631 F.3d 510 (8th Cir. 2011) ....................................................................................................7

*Wilson v. Triller, Inc.*,
 598 F. Supp. 3d 82 (S.D.N.Y. 2022) ..................................................................................2, 12

**Statutes**

18 U.S.C. § 2710 ............................................................................................................................1

18 U.S.C. § 2710(a)(3) ..............................................................................................................8, 12

18 U.S.C. § 2710(a)(4) ..............................................................................................................8, 10

18 U.S.C. § 2710(b) .................................................................................................................7, 13

**Other Authorities**

Black's Law Dictionary (6th ed. 1990) ........................................................................................12

## **INTRODUCTION**

As Judge Robert Bork's Supreme Court confirmation hearings were approaching in 1987, a reporter visited the judge's local video store and asked for a list of the movies he had recently rented. The store clerk complied, and the reporter's newspaper published the list of 146 specific movie tapes Bork's family had rented over the previous two years. *See* Andrea Peterson, How Washington's Last Remaining Video Rental Store Changed the Course of Privacy Law, WASHINGTON POST (Apr. 28, 2014).[1] Distressed by this invasion of privacy, and seeking to ensure that movie viewing habits could not again be weaponized to attack individuals' characters or embarrass them through public disclosure, the following year Congress passed the Video Privacy Protection Act ("VPPA"). *See, e.g.*, *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252-53 (11th Cir. 2015).

The VPPA is a relatively straightforward statute. Consistent with its purpose, it proscribes "video tape service providers" ("VTSPs") from knowingly disclosing "personally identifiable information" ("PII")—specifically, information that identifies a consumer and the "*video cassette tapes* or similar audio visual materials" they purchased or rented—without the consumer's consent. 18 U.S.C. § 2710 (emphasis added). Violations are subject to statutory penalties of $2500 and attorney's fees. *Id.* § 2710(c).

Congress intended for this law to be "quite narrow." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284-85 (3d Cir. 2016). But recently, in an effort to exploit the VPPA's severe remedies, plaintiff's attorneys have sought to apply the VPPA exceptionally broadly, bringing nationwide class actions seeking tens or hundreds of millions of dollars against a wide swath of

---

[1] https://www.washingtonpost.com/news/the-switch/wp/2014/04/28/how-washingtons-last-remaining-video-rental-store-changed-the-course-of-privacy-law/ (last visited Dec. 16, 2024).

1

entities that provide virtually *any* form of prerecorded video on the Internet. In this case, that involves websites that provide *educational videos*, not movies like one would find on video cassette tapes. (*See* Compl. ¶ 31).

Such corruption of the VPPA is made possible by a quirk in modern websites' ordinary back-end functionality, combined with ambiguous, "not well drafted" language in the VPPA in particular in the definitions of VTSPs and PII. *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 90 (S.D.N.Y. 2022) (citation omitted). Plaintiffs' Class Action Complaint (Dkt. #1) ("Complaint") alleges that, like many websites, the websites at issue here (the "Websites") use small pieces of code called "Pixels." These Pixels transmit users' Internet activity to third parties. According to the Complaint, the Pixels on the Websites disclosed information to Meta and TikTok, including (i) Plaintiffs' and putative class members' "Facebook IDs" or cell phone numbers, and (ii) information about the subscriptions or videos they purchased or accessed. The Complaint asserts that the unexceptional, ordinary operation of these ubiquitous Pixels violates the VPPA.

In today's hyper-connected world, surely few if any Internet users would be surprised to learn that their browsing or viewing activity is shared. Notably, the Complaint does not allege that *anyone*—whether at Facebook, TikTok, or otherwise—actually saw consumers' video viewing history, let alone that any consumer's video viewing information was ever disclosed to the public, or that any consumer suffered financial, emotional, or other injury.

The Court should reject the Complaint's misapplication of the VPPA to disclosure of information about consumers' viewing of educational videos, in particular when that information was never made public. The purpose, language, and legislative history of the statute demonstrate that what the Complaint protests is not what the VPPA intended to punish.

The Complaint also fails to plead a claim for several additional reasons. First, defendant

Colibri Group has nothing to do with the Websites or disclosures at issue. Second, even if the VPPA were held to apply to the disclosures in question, and that the disclosed information identifies Plaintiffs' Facebook pages and TikTok accounts, the Complaint fails to allege that those pages and accounts contain information that identifies Plaintiffs, as required to constitute PII. Third, the Complaint fails to allege that the disclosures specifically identified the videos Plaintiffs accessed. Finally, the Complaint does not allege that any disclosure relating to Plaintiff Oshea was made to Meta, thus precluding any claim by Oshea on such basis.

## BACKGROUND

### A. The Websites

The Complaint alleges that disclosures were made by Meta and TikTok Pixels on "Colibri Group" websites "including but not limited to the www.elitelearning.com website, the www.homeceuconnection.com, the www.colibrirealestate.com website, the www.mckissock.com website, and the www.fhea.com website." (Compl. ¶ 2) (collectively the "Websites"). These Websites provide *educational* videos "from various industries, including nursing, heathcare, home inspection, engineering, appraisal, social work, occupational therapy, pharmacy, counseling, and other fields." (*Id.* ¶ 31).

### B. Defendant

The Complaint names "Colibri Group, Inc." as the defendant. Colibri Group, Inc., does not exist. It appears the Complaint intended to name Colibri Group, *LLC*, as the Defendant. The Complaint attempts to connect Colibri Group to the Websites by alleging that Colibri Group is the "parent company governing several companies and brands," which operate and control the Websites. (*Id.* ¶ 32). That allegation is incorrect; Colibri Group, LLC, is not the parent of, and has no control over, the Websites. Aside from that vague conclusion, the Complaint contains no allegations regarding the relationship between Colibri Group and any of the Websites.

### C.     The Metal Pixel and TikTok Pixels

The Complaint asserts that the disclosures in question were executed by two programming codes installed on the Websites: the "Meta Pixel" and "TikTok Pixel." (*Id.* ¶ 2).

It alleges that the *Meta* Pixel was installed on each of the Websites and that it disclosed Plaintiff Damrau's Facebook ID ("FID") along with either the subscription or video title Damrau accessed. (*Id.* ¶¶ 4, 17). It alleges that a FID can be used to identify a consumer's Meta Profile or Facebook page. (*Id.* ¶ 4).

The Complaint alleges that the *TikTok* Pixel was installed on the elitelearning.com and colibrirealestate.com Websites (*id.* ¶ 102), and that it disclosed Plaintiffs' "cellular telephone number and the subscription to access prerecorded videos or the specific title of prerecorded videos that each of [Defendant's] customers purchased…." (*Id.* ¶ 5).

### D.     Plaintiffs

According to the Complaint, Plaintiff Damrau is a resident of Suffolk County, NY. (*Id.* ¶ 9). "[O]n or about July 6, 2024, Plaintiff Damrau purchased an all-access subscription to access prerecorded video material from Defendant's [elitelearning.com] website…." (*Id.* ¶ 11). It appears this subscription was the "NY Social Work All Access Pass," which Damrau used to obtain unspecified "pre-recorded videos from Defendant." (*Id.* ¶¶ 12, 16). During this time period, Damrau allegedly had a Meta account and profile, and a TikTok account and profile. (*Id.* ¶¶ 13-14). The Complaint claims that once Damrau completed her purchases, "the 'purchase' event code was sent to Meta alongside [Damrau's FID] within the same session as the specific title of the prerecorded video material or subscription, product code, and her request to join." (*Id.* ¶ 17).

The Complaint alleges Plaintiff Oshea, a resident of Suffolk County, NY, purchased prerecorded video content from the website www.elitelearning.com, including the "Managing

4

Professional Boundaries" course, and that Defendant disclosed that information, along with Oshea's cellphone number, to TikTok through the TikTok Pixel. (*Id.* ¶¶ 20, 22, 25).

### E. The Claim and Proposed Classes

The Complaint asserts a single claim for violation of the VPPA on behalf of Plaintiffs and two proposed classes. First, Plaintiff Damrau seeks to represent a class consisting of "all persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material or a subscription to access prerecorded video material or services from any one of Defendant's portfolio of Websites while maintaining an account with *Meta Platforms, Inc. f/k/a Facebook, Inc.*" (*Id.* ¶ 101 (emphasis added)). Second, both Plaintiffs seek to represent a similarly defined class who purchased prerecorded videos or subscriptions from www.elitelearning.com or www.colibrirealestate.com websites while maintaining an account with *TikTok*. (*Id.* ¶ 102 (emphasis added)).

## **ARGUMENT**

"To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. Specifically, "the complaint must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' and instead must 'allege sufficient facts that, taken as true, state a claim to relief that is plausible on its face.'" *Bell v. Emp. Connection*, No. 4:23-cv-00267-SEP, 2024 WL 1253820, at *2 (E.D. Mo. Mar. 25, 2024) (Pitlyk, J.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and quoting *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017)).

### I. COLIBRI GROUP IS THE WRONG DEFENDANT.

The proper defendant in any lawsuit is the entity or individual that performed or was responsible for the conduct in question. *See, e.g.*, *Sprint Spectrum L.P. v. AT&T Commc'ns, Inc.*,

5

No. 00–0973–CV–W–5, 2001 WL 36143293, at *4 (W.D. Mo. Feb. 8, 2001) (dismissing party that was not the "real party in interest"). Here, that is not Colibri Group.

First, the named defendant—Colibri Group, Inc.—does not exist. A non-existent entity cannot be sued. *Shannon v. GfK Custom Rsch. LLC*, No. 4:13-CV-682 CAS, 2013 WL 4829220, at *6 (E.D. Mo. Sept. 10, 2013) ("Plaintiff cannot state a claim against a nonexistent entity, and therefore his claims against these defendants must be dismissed.").

Second, even assuming *arguendo* that the Complaint attempts to name Colibri Group, LLC, as the Defendant, that entity has nothing to do with the Websites. The Complaint's naming of Colibri Group as the defendant appears to be based on the (mis)understanding that "Colibri Group" is the "parent company" that governs other companies that own and control the Websites. (Compl. ¶ 32).

Colibri Group, LLC, is not the parent company for any of the Websites referenced in the Complaint and has no relationship with, or control over, them. However, even if Colibri Group were the parent to the companies governing the Websites, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation omitted).

Missouri law recognizes only two exceptions to this rule. First, when the parent is the *alter ego* of the subsidiary, *Mid-Mo. Tel. Co. v. Alma Tel. Co.*, 18 S.W.3d 578, 582 (Mo. App. W.D. 2000); and second, when a principal-agent relationship is established between a parent and its subsidiary. *See State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. banc 2002). A key element to both exceptions is the parent's extensive control of the subsidiary. For *alter ego* liability, the parent must possess "complete domination, not only of finances, but of policy and

6

business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own . . . ." *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. banc 2013). For agency liability, the parent must exercise "such domination and control that the controlled corporation has … no separate mind, will or existence of its own and is but a business conduit for its principal." *Weitz Co. v. MH Washington*, 631 F.3d 510, 522 (8th Cir. 2011). The Complaint alleges no facts supporting either theory. Colibri Group is in no way responsible—operationally or legally—for the Websites. The Court should therefore dismiss the Complaint in its entirety because it names a defendant that has nothing to do with the conduct at issue.

## II.   THE COMPLAINT'S ATTEMPT TO PLEAD A VPPA CLAIM FAILS IN MULTIPLE WAYS.

The VPPA was passed in 1988 in response to the publication of the movie video rental history of Judge Robert Bork, in connection with his 1987 Supreme Court confirmation hearing:

> Congress enacted the VPPA in 1988 after a newspaper "published a profile of [Supreme Court nominee and then D.C. Circuit] Judge Robert H. Bork" which contained the titles of 146 films he and his family had rented from a local video store.… Senator Patrick Leahy explained that the new law was meant to protect "our right to privacy [in] the choice of *movies* that we watch with our family in our own homes…."

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252-53 (11th Cir. 2015) (emphasis added) (quoting 134 Cong. Rec. S5396–08, S. 2361 (May 10, 1988)).

The VPPA provides a consumer with a cause of action if a "video tape service provider" knowingly discloses the consumer's PII without the consumer's consent.[2] 18 U.S.C. § 2710(b);

---

[2] Each of the Websites posts a privacy policy advising that they share consumers' personal identifiers such as their name, payment information, and order details. *See* https://www.elitelearning.com/privacy-policy/; https://homeceuconnection.com/pages/privacy-policy; https://www.colibrirealestate.com/privacy-policy/; https://www.mckissock.com/privacy-policy/; and https://www.fhea.com/privacy-policy/. All the Websites, except www.homeceuconnection.com, also post a cookie policy detailing the Websites' use of "cookies, pixel tags, local storage, and other technologies to automatically collect information" (collectively

*Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) ("in order to plead a plausible claim under [the VPPA], a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized [by the consumer]").

The statute defines "video tape service provider" to be "any person, engaged in the business … of rental, sale, or delivery of prerecorded *video cassette tapes or similar audio visual materials*." 18 U.S.C. § 2710(a)(4) (emphasis added). The statute defines "personally identifiable information" to "include information which identifies a person as having requested or obtained *specific* video materials or services from a video tape service provider…." *Id.* § 2710(a)(3) (emphasis added).

**A.    The VPPA's Text And Legislative History Indicate Video Tape Service Providers Are Limited To Providers Of Pre-Recorded Materials "Similar" To Movies, Not Educational Videos Like Those On The Websites.**

The VPPA was intended to address conduct very different than alleged in the Complaint. Sparked by the newspaper article about Judge Bork, the VPPA was intended to prevent attacks on individuals' character through *public* disclosure of their *movie* and entertainment viewing habits.

The formal title of the statute—"Wrongful disclosure of video tape rental or sales records"—clearly reflects this focus. As does the statutory language itself: Congress restricted the scope of VTSPs to entities that rented or sold materials "similar" to "prerecorded video cassette tapes." *Id.* § 2710(a)(4) (emphasis added). The word "similar" is limiting: "Congress use[s] the

---

"Cookies") and the specific Cookies that the Websites utilize to collect and share such information. *See* https://www.elitelearning.com/online-cookie-policy/; https://www.colibrirealestate.com/online-cookie-policy/; https://www.mckissock.com/online-cookie-policy/ ; and https://www.fhea.com/online-cookie-policy/. While www.homeceuconnection.com does not post a cookie policy, its privacy policy states, "We may use cookies, pixel tags, local storage, and other technologies to automatically collect information." *See* https://homeceuconnection.com/pages/privacy-policy.

8

comparative term 'similar' to … indicate[] an intent to limit the … clause's reach to offenses which are 'comparable' or 'nearly corresponding' to the [specified conduct]." *See United States v. Stanko*, 491 F.3d 408, 414 (8th Cir. 2007) (emphasis added) (citation omitted).

The legislative history of the VPPA supports the interpretation that the VPPA was intended to be limited to movies or other pre-recorded entertainment. Consistent with the impetus for the statute, the legislative history repeatedly emphasizes that the VPPA was designed to prevent disclosure about the *movies* individuals viewed—not educational videos. For example, testimony in the legislative record for the statute's passage focuses on films:

- "The *movies* we view in the privacy of our home … may reveal sensitive, personal information about us and should not be disclosed absent a compelling State interest . . . ." Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947 and S. 2361 Before the Subcomm. on Cts., C.L., & the Admin. of Just. of the H. Comm. on the Judiciary and the Subcomm. on Tech. & the Law of the S. Comm. on the Judiciary, 100th Cong. 54 (1998) ("1988 VPPA Joint Hearing") (emphasis added).

- **"**[A] person would have to consent to the—to a release of such information as the precise titles of *movies* taken out of a video store." *Id.* at 32 (emphasis added).

- "There's a gut feeling that people ought to be able to read books and watch *films* without the whole world knowing. Books and *films* are the intellectual vitamins that fuel the growth of individual thought." *Id.* at 27.

- **"**The term 'video tape service provider' means any person engaged in the business … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, *such as laser disks, open-reel movies, or CDI technology*…." S. Rep. No. 100-599 (1988), at 12 (emphasis added).

The Complaint disregards this statutory language and legislative history by targeting the alleged disclosure of consumers' viewing of educational videos. Rather than limiting Plaintiffs' VPPA claim to videos "similar" to "prerecorded video cassette tapes," the Complaint appears to take the position that *any* video qualifies. (*See, e.g.*, Compl. *passim* (generically referring to the videos at issue as prerecorded "videos," "video content," or "video material")). The statute clearly is not so broad. It would have been exceedingly simple for Congress to have defined VTSPs to

9

encompass distributors of *any* video. Congress chose not to, instead using the unwieldy clause "video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). That deliberate, unconventional language must be given effect. *See, e.g.*, *U.S., ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 431 (2023) (emphasizing "the interpretive principle that every clause and word of a statute should have meaning") (internal quotations omitted); *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018) ("'Congress' choice of words is presumed to be deliberate and deserving of judicial respect.") (internal quotations omitted); *Brands Int'l Corp. v. Reach Cos., LLC*, 103 F.4th 501, 508 (8th Cir. 2024) ("[w]hen engaging in statutory interpretation, [a court must] read and construe the statute as a whole, giving effect wherever possible to all of its provisions") (internal quotations omitted).

At least one court has recognized that the VPPA is limited to videos similar to films, explaining:

> While Congress explicitly recognized that these privacy values extend past *films*— by repeatedly referencing books—*Congress ultimately chose not to extend these protections to other materials*…. The Senate Report … indicates that 'similar audio visual material' refers more *narrowly* to prerecorded videos that *are films or have similar content rather than the generic world of audio visual materials that are prerecorded*, full stop.

*Aldana v. Gamestop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *5 (S.D.N.Y. Feb. 21, 2024) (emphasis added) (internal citations omitted); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (observing generally, "we are not persuaded that the 1988 Congress intended for the VPPA to cover circumstances so different from the ones that motivated its passage").

The conduct alleged here falls outside the VPPA. The Websites provide access to educational videos, not films. There is no suggestion that any disclosure has been or would be used to attack anyone's character. Nor is there any allegation that any PII disclosed by the Websites is

10

made public. To the contrary, if anything, one would think that consumers themselves might—routinely and voluntarily—disclose that they viewed the Websites' videos in order to satisfy continuing education requirements or for other purposes.

Plaintiffs' theory suggests no limit to the nature of videos within the VPPA's scope, contradicting the statute's language, purpose, logic, and legislative history. Educational videos are not covered. The Websites are not "video tape service providers"; therefore, Plaintiffs' claim should be dismissed with prejudice.

**B.        Even If The Meta and TikTok Pixels Allow Identification Of Plaintiffs' Facebook Pages Or TikTok Accounts, The VPPA Claim Should Be Dismissed Because The Complaint Fails To Allege Those Pages Contain Plaintiffs' Personal Information.**

The Complaint alleges that the Meta Pixel's disclosure of Plaintiff Damrau's FID constitutes PII under the VPPA because it allows identification of Damrau's Facebook page; and the TikTok Pixel's disclosure of Plaintiffs' cell phone numbers constitutes PII because they allow identification of their TikTok accounts. (*E.g.,* Compl. ¶¶ 4-5). While most Facebook and TikTok pages contain information identifying the user, that is not always the case. For that reason, even when a FID is disclosed, several courts have granted motions to dismiss if the complaint does not allege that the plaintiff's Facebook page includes such personally identifying information. *See Ghanaat v. Numerade Labs*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("[P]laintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses. Accordingly, the complaint does not adequately allege that their FIDs result in the sharing of any personal information."); *see also Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (dismissing VPPA claim where "Plaintiffs fail[ed] to allege their PII was disclosed because they d[id] not identify what information on their Facebook pages, if any, was viewable and could be used to identify them."); *Solomon v. Flipps Media, Inc.*, No. 22-CV-5508 (JMA)

11

(JMW), 2023 WL 6390055, at *2 (E.D.N.Y. Sept. 30, 2023) (quoting *Ghanaat*); *Wilson*, 598 F. Supp. 3d at 92 (granting motion to dismiss where the complaint "contain[ed] no allegation as to what information was actually included on [plaintiff]'s [Triller] profile nor how that information could be used by a third party to identify [plaintiff].").

The Complaint contains no allegations regarding whether Plaintiffs' Facebook pages or TikTok accounts contain information that identifies them. It therefore does not allege that the Websites disclosed Plaintiffs' PII, and the VPPA claim fails.

**C.      The Disclosed Information Is Not PII Because It Does Not Identify "Specific Video Materials or Services," As Required By The Statute.**

The VPPA defines PII as information that identifies a person as having "requested or obtained *specific* video materials or services." 18 U.S.C. § 2710(a)(3) (emphasis added). "Specific" means "definite; explicit; of an exact or particular nature." Black's Law Dictionary (6th ed. 1990). Thus, to qualify as PII, the disclosed information must identify the "*precise title*" of the video a person requested or watched. 1988 VPPA Joint Hearing, *supra*, at 32 (emphasis added); *see also Eichenberger*, 876 F.3d at 984 (PII "identifies an individual as having watched certain videos"); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 285 (3d Cir. 2016) (to violate the VPPA, the information disclosed by a VTSP must include "personally identifiable information that identifies a specific person and ties that person to *particular videos* that the person watched.") (emphasis added); *Martinez v. D2C, LLC*, No. 23-21394-CIV, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) (noting that the VPPA "requir[es] plaintiffs to allege … that *specific [video] titles* were disclosed") (emphasis added); *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) (dismissing VPPA claim where the Facebook Pixel disclosed the particular *webpage* the consumer visited, but not "the name of the specific video materials on the page," or "which specific video materials were requested or obtained") (internal quotations omitted); *In re Hulu Priv. Litig.*,

12

86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("The point of the VPPA, after all, is not so much to ban the disclosure of user or video data" but "to ban the disclosure of information connecting a certain user to certain videos.").

The Complaint does not allege that the Websites' disclosures identified the videos Plaintiffs allegedly purchased or viewed; it claims the Websites disclosed *either* video titles *or subscriptions*. (Compl. ¶¶ 1, 4, 5, 11, 16, 19, 35, 75, 80-82, 86, 93, 96, 100, 111) (emphasis added). "Subscriptions"—such as Plaintiff Damrau's subscription to the "NY Social Work All Access Pass" (*id.* ¶ 16), involve a *set* of materials. The Complaint does not allege which video(s) in the subscriptions Plaintiffs actually viewed, if any. That does not meet the requirements of PII. *See Gonzalez v. Central Elec. Co-op, Inc.*, Civ. Nos. 08–6236–HO, 08–6240–HO, 2009 WL 3415235, at *11 (D. Or. Oct. 15, 2009) (holding hotel did not violate the VPPA because it did not specifically identify which of 15 movies plaintiff purchased, and therefore had not disclosed PII).

**D.      Plaintiff Oshea Does Not Assert A Claim That Her PII Was Disclosed To Meta.**

The foundational conduct underlying any VPPA claim is a disclosure of PII to a third party. 18 U.S.C. § 2710(b). The Complaint does not allege Oshea's PII was disclosed to Meta.

Paragraphs 20 to 30 of the Complaint contain the allegations regarding Plaintiff Oshea. Those paragraphs allege that Oshea was a user of TikTok and had a TikTok account and profile (Compl. ¶¶ 21, 23); that Defendant disclosed Oshea's viewing information to TikTok (*id.* ¶ 29); and that TikTok used the PII to match her purchases to her TikTok profile (*id.* ¶ 28). Meta is never mentioned. In fact, the Complaint does not allege that Oshea had a Meta/Facebook account, a Meta/Facebook profile, or a Facebook ID. To the extent the Complaint purports to assert a claim relating to disclosure of Oshea's PII to Meta, that claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

13

Dated: December 19, 2024	*/s IJay Palansky*
	IJay Palansky (*pro hac vice*)
	ipalansky@atllp.com
	ARMSTRONG TEASDALE LLP
	4642 S. Ulster Street, Suite 800
	Denver, Colorado 80237
	(720) 200-0676

	Paul Croker (Bar #57000)
	Nick Slovikoski (Bar #73019)
	pcroker@atllp.com
	nslovikoski@atllp.com
	ARMSTRONG TEASDALE LLP
	2345 Grand Blvd., Suite 1500
	Kansas City, Missouri 64108
	Telephone: 816.221.3420
	Fax: 816.221.0786

	COUNSEL FOR COLIBRI GROUP, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 19, 2024, the foregoing was filed electronically using the Court's CM/ECF system which will serve a copy upon all parties of record.

<u>          /s/ IJay Palansky                    </u>