# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TRACEY DAMRAU, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 4:24-cv-01441-SEP |
| COLIBRI GROUP, LLC. | **JURY TRIAL DEMANDED** |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

i

**Table of Contents**

Table of Authorities ................................................................................................ iii

I.  Plaintiffs do not (and cannot) plead facts to support an alter ego theory or principal-agent theory. ...................................................................... 5

II. Even if Colibri was the parent company (it is not), the professional education courses are not within the VPPA's intended scope. ......................... 8

III. Plaintiffs fail to identify "specific video materials or services" to constitute PII as required by the VPPA. ............................................................ 11

IV. An ordinary person could not decipher PII from the muddle of computer code that is purportedly transmitted by the Pixels. ......................... 12

CONCLUSION ...................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldana v. GameStop, Inc.*,
  No. 22-CV-7063, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024)..................8, 9, 10, 11

*United States ex rel. Cairns v. D.S. Med. LLC*,
  42 F.4th 828 (8th Cir. 2022) ...........................................................................................8

*Clark v. Lombardi*,
  No. 2:10-cv-66-AGF, 2011 WL 1533021 (E.D. Mo. Apr. 21, 2011)....................6, 7

*Dow v. Abercrombie & Kent Int'l, Inc.*,
  No. 99 C 6923, 2000 WL 688949 (N.D. Ill. May 24, 2000) .......................................7

*Edwards v. Learfield Commc'ns, LLC*,
  697 F. Supp. 3d 1297 (N.D. Fla. 2023)................................................................13, 14

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) .......................................................................................13

*Express Scripts, Inc. v. Pharmland, LLC*,
  No 4:15-cv-1251-HEA, 2016 WL 8674193 (E.D. Mo. Sept. 30, 2016)...................6

*Feldman v. Star Trib. Media Co. LLC*,
  659 F. Supp. 3d 1006 (D. Minn. 2023).....................................................................12

*Goellner-Grant v. Platinum Equity LLC*,
  341 F. Supp. 3d 1022 (E.D. Mo. 2018).......................................................................7

*Golden v. NBCUniversal Media, LLC*,
  688 F. Supp. 3d 150 (S.D.N.Y. 2023).......................................................................12

*Gonzalez v. Cent. Elec. Co-op, Inc.*,
  No. CIV. 08-6236-HO, 2009 WL 3415235 (D. Or. Oct. 15, 2009) .......................12

*Harris v. Pub. Broad. Serv.*,
  662 F. Supp. 3d 1327 (N.D. Ga. 2023) ....................................................................12

*In re Hulu Priv. Litig.*,
  No. 11-CV-03764, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ........................10

*MCI Telecomm. Corp. v. AT&T Co.*,
  512 U.S. 218 (1994).......................................................................................................9

*Miami Prods. & Chem. Co. v. Olin Corp.*,
 449 F. Supp. 3d 136 (W.D.N.Y. 2020) ...................................................................................7

*Nestle Purina Petcare Co. v. Blue Buffalo Co.*,
 No. 4:14-cv-859-RWS, 2016 WL 5390945 (E.D. Mo. Sept. 27, 2016) ...................................6

*In re Nickelodeon Consumer Priv. Litig.*,
 827 F.3d 262 (3d Cir. 2016) ........................................................................................9, 13, 14

*Pietoso, Inc. v. Republic Servs., Inc.*,
 No. 4:19-CV-00397-JAR, 2021 WL 5177357 (E.D. Mo. Nov. 8, 2021) .................................8

*Radaszewski by Radaszewski v. Telecom Corp.*,
 981 F.2d 305 (8th Cir. 1992) ...................................................................................................6

*Reers v. Deutsche Bahn AG*,
 320 F. Supp. 2d 140 (S.D.N.Y. 2004) .....................................................................................7

*In re Vizio, Inc. Consumer Priv. Litig.*,
 238 F. Supp. 3d 124 (C.D. Cal. 2017) ...................................................................................10

*Weitz Co. v. MH Washington*,
 631 F.3d 510 (8th Cir. 2011) ...................................................................................................6

*Wilson v. Triller, Inc.*,
 598 F. Supp. 3d 82 (S.D.N.Y. 2022) .....................................................................................13

**Statutes**

18 U.S.C. § 2710(a)(4) .................................................................................................................8

Plaintiffs' Opposition to Colibri's Motion to Dismiss (ECF No. 20) (the "Opposition") fails to identify sufficient facts to support an alter ego theory or principal-agent theory against Colibri and fails to demonstrate the Amended Class Action Complaint (ECF No. 15) (the "Complaint") states a claim under the VPPA. First, Plaintiffs cannot adequately plead that Colibri Group, LLC ("Colibri") is the parent of the websites identified in the Complaint or completely dominates and controls the websites as required to pierce the corporate veil. Next, even if Plaintiffs did adequately plead alter ego liability (they did not), the VPPA's language is ambiguous and, therefore, the legislative history must be considered. That history confirms the VPPA was not intended to apply to professional education courses like those alleged in the Complaint. Finally, Plaintiffs miss the mark with regard to the disclosure of PII. They argue extensively that a Facebook ID constitutes PII, but fail to address Colibri's arguments about the confounding format of the alleged disclosure and fail to explain how an ordinary person would know what the information they claim is disclosed by the Meta or TikTok Pixels actually means.

**I.    Plaintiffs do not (and cannot) plead facts to support an alter ego theory or principal-agent theory.**

Plaintiffs make conclusory allegations that Colibri operates and maintains a portfolio of websites, including the www.elitelearning.com website, the www.homeceuconnection.com website, the www.colibrirealestate.com website, the www.mckissock.com website, and the www.fhea.com website (collectively, the "Websites") and is the parent company that specifically governs subsidiaries who control the Websites. Plaintiffs' Opposition further relies on two assertions that they contend specifically allege that Colibri has complete dominance and control over the Websites: (1) Colibri created and maintained a Global Privacy Policy, and (2) Colibri "asserts total control over data collection for the Websites because they command 'any questions' be directed 'to privacy@colibrigroup.com rather than an email address for the individual

5

Websites.'" Opp. at 4, 7. None of these allegations suffice to demonstrate alter ego or principal-agent liability.

As an initial matter, Plaintiffs argue that an alter ego theory is a fact-intensive inquiry that cannot be resolved at the motion to dismiss stage. Opp. at 3-4. But, this Court can (and does) grant motions to dismiss based on inadequately pleaded alter ego theories. *See Express Scripts, Inc. v. Pharmland, LLC*, No 4:15-cv-1251-HEA, 2016 WL 8674193, at *4 (E.D. Mo. Sept. 30, 2016) (granting motion to dismiss and rejecting the plaintiff's alter ego theory); *Nestle Purina Petcare Co. v. Blue Buffalo Co.*, No. 4:14-cv-859-RWS, 2016 WL 5390945, at *6 (E.D. Mo. Sept. 27, 2016) (same); *Clark v. Lombardi*, No. 2:10-cv-66-AGF, 2011 WL 1533021, at *2–3 (E.D. Mo. Apr. 21, 2011) (same); *see also Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir. 1992) (affirming dismissal).

Dismissal is appropriate here as Plaintiffs offer nothing more than general and conclusory allegations to support its alter ego theory and principal-agent theory. *Express Scripts*, 2016 WL 8674193, at *4 (granting motion to dismiss based on alter ego theory because "Plaintiffs have merely stated, in conclusory fashion, that the individual defendants dominated and controlled" the corporate entity). To avoid dismissal, Plaintiffs must adequately allege Colibri possesses complete domination and control of the Websites. "[C]ontrol must be complete domination, such that the corporate entity has no separate existence of its own." *Express Scripts*, 2016 WL 8674193, at *4; *see also Weitz Co. v. MH Washington,* 631 F.3d 510, 522 (8th Cir. 2011) (The parent must exercise "such domination and control that the controlled corporation has … no separate mind, will or existence of its own and is but a business conduit for its principal."). In fact, "general allegations of substantial control and widespread policies do not satisfy the pleading requirement for piercing the corporate veil." *Clark*, 2011 WL 1533021, at *2. "[M]acro-management is not a sufficient

6

basis in itself for finding [a parent] controlled and dominated [its subsidiary] to such a degree that corporate formalities should be disregarded." *Goellner-Grant v. Platinum Equity LLC*, 341 F. Supp. 3d 1022, 1030 (E.D. Mo. 2018).

Plaintiffs' allegations of a global privacy policy and direction to the privacy@colibrigroup.com email address are at most general allegations of a widespread policy and macro-management that courts have held do not satisfy the pleading requirements for alter ego liability. *See Clark*, 2011 WL 1533021, at *2; *Goellner-Grant*, 341 F. Supp. 3d at 1030. The mere fact that the Websites are not distinguished from the privacy@colibrigroup.com email address does not demonstrate Colibri's complete control of the Websites. *See, e.g.*, *Miami Prods. & Chem. Co. v. Olin Corp.*, 449 F. Supp. 3d 136, 185 (W.D.N.Y. 2020) ("[T]he Court is not persuaded that a failure to distinguish between parent and subsidiary on a web page is sufficient to show that the parent controls the subsidiary's marketing and operational policies.") (internal citation omitted); *Dow v. Abercrombie & Kent Int'l, Inc.*, No. 99 C 6923, 2000 WL 688949, at *5 (N.D. Ill. May 24, 2000) ("Sharing a website is akin to sharing a logo, which is insufficient to evince control."); *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 157 (S.D.N.Y. 2004) ("With respect to marketing policies, the fact that subsidiaries share a logo, or that the parent decides to present several corporations on a website in a unified fashion, is insufficient to show lack of formal separation between two entities.").

Coupled with the fully conclusory allegations that Colibri is the parent of the Websites and completely controls the Websites, Plaintiffs fall far short of alleging facts sufficient to support that Colibri completely dominated the Websites, or the entities who *do* control the Websites have no separate mind, will, or existence of their own. "Under Missouri law, there is a presumption of corporate separateness, and courts do not lightly disregard the corporate form to hold a parent

7

company liable for the torts of a subsidiary." *Pietoso, Inc. v. Republic Servs., Inc.*, No. 4:19-CV-00397-JAR, 2021 WL 5177357, at *2 (E.D. Mo. Nov. 8, 2021). Thus, even if Colibri was the parent company (which it is not), the Complaint fails to plead facts to show the complete domination and control necessary to pierce the corporate veil and overcome the presumption of corporate separateness in Missouri. Accordingly, dismissal is appropriate.[1]

## II.     Even if Colibri was the parent company (it is not), the professional education courses are not within the VPPA's intended scope.

The VPPA applies only to those "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials." 18 U.S.C. § 2710(a)(4). Plaintiffs rely on *United States ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 836 (8th Cir. 2022), for the proposition that "[s]tarting with legislative history and purpose . . . is no way to read a statute." Opp. at 8. However, Plaintiffs ignore the very next sentence of *Cairns*, which states, "After all, **when a statute is unambiguous**, we start and end in the same place: with the words of the statute itself." *Cairns*, 42 F.4th at 836 (emphasis added) (interpreting the False Claims Act—not the VPPA). Here, the VPPA *is ambiguous* with regard to the meaning of "similar audiovisual materials"—Colibri submits that the educational courses (which are not always prerecorded) are not "similar" to prerecorded video cassette tapes identified in the statute. That is the crux of the parties' disagreement. *See Aldana v. GameStop, Inc.*, No. 22-CV-7063, 2024 WL 708589, *4 (S.D.N.Y. Feb. 21, 2024) ("The parties' disagreement about the meaning of 'similar' indicates that the statutory language of the VPPA is ambiguous in

---

[1] Plaintiffs alternatively request a stay of the case to seek discovery regarding alter ego liability. Opp. at 7 n.1. The Court should not allow discovery on whether Colibri is the alter ego of the entities who do control the Websites because Plaintiffs have not alleged any facts in the Complaint supporting an alter ego theory and could not establish Colibri is an alter ego of the entities even if discovery were allowed. Plaintiffs are merely attempting to undergo a fishing expedition.

this context."). Thus, the VPPA's legislative history must be examined. *Id.* at *3.

The genesis of the VPPA was the disclosure of Judge Bork's film rental history by a local video store.[2] This context is crucial and the VPPA was enacted in the age of Blockbuster when movies were on video cassette tapes and prior to the dawn of the internet. *See MCI Telecomm. Corp. v. AT&T Co.*, 512 U.S. 218, 228 (1994) ("The 'most relevant time for determining a statutory term's meaning' is the time when the law was enacted").

Plaintiffs critique that Colibri's position "is an extremely narrow reading" of the VPPA and yet, the scope of the VPPA was *intended* to be "quite narrow." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284-85 (3d Cir. 2016). Plaintiffs incorrectly state that Colibri argues *only* movies are regulated by the VPPA, which would render the "similar audio visual materials" language "superfluous". Opp. at 8. Rather, as set forth in Colibri's Memorandum in Support of its Motion to Dismiss, Colibri maintains that the VPPA regulates movies *and* "pre-recorded materials 'similar' to movies," thus Colibri's position does not render the VPPA's language superfluous. Memorandum in Support of Motion to Dismiss Amended Class Action Complaint, ECF No. 17, at 9. The legislative history makes clear that the focus was preventing the unauthorized disclosure of individuals' film rental history. In other words, it outlawed video tape service providers, such as Blockbuster, from unilaterally disclosing its customers' purchases. Plaintiffs nevertheless seek to shoehorn educational courses into the confines of a statute that was not intended to stretch so far.

Contrary to the VPPA's language and legislative history, Plaintiffs posit that the scope of

---

[2] *See* Andrea Peterson, How Washington's Last Remaining Video Rental Store Changed the Course of Privacy Law, WASHINGTON POST (Apr. 28, 2014), https://www.washingtonpost.com/news/the-switch/wp/2014/04/28/how-washingtons-last-remaining-video-rental-store-changed-the-course-of-privacy-law (last visited March 27, 2025).

9

the VPPA has no bounds or limitation. They ignore the title of the statute itself—"Wrongful disclosure **of video tape rental or sales records**" (emphasis added)—which clearly demonstrates Congress' focus on films, not educational content viewed online. Despite claiming the Court's inquiry should end at the statute's plain language, Plaintiffs conveniently chose to ignore *this* plain language. Had Congress intended the statute to encompass all video content full stop, regardless of content or medium, it would have used such language. But it did not. And where courts have applied the VPPA to modern technologies it has been rooted in the similarity regarding the content of programming offered. *See, e.g., In re Hulu Priv. Litig.*, No. 11-CV-03764, 2012 WL 3282960, at *5-6 (N.D. Cal. Aug. 10, 2012) (classifying Hulu as "video tape service provider" based on finding similarity in the video content it provides "via the Internet or a bricks-and-mortar store."); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 124, 1222 (C.D. Cal. 2017) (concluding Vizio was "video tape service provider" due to agreements it entered with content providers such as Netflix and Hulu for its Smart TVs, and its advertising of Smart TVs with access to "entertainment movies, TV shows, and more").

The Websites are certainly not in the same category as Hulu or Netflix, because they do not provide content similar to video tape service providers in that the Websites offer professional education video content, not movies similar to the video content offered by brick-and-mortar stores that existed when the VPPA was enacted by Congress. Indeed, the Complaint concedes that the Websites do not provide entertainment; rather, they provide "continuing education courses" and "on-demand licensing courses." *See* Complaint, ¶ 81. *See also Aldana*, 2024 WL 708589, at *4 ("The Senate Report thus indicates that 'similar audio visual material' **refers more narrowly to prerecorded videos that are films or have similar content** rather than the generic world of "audio visual mafterials that are pre-recorded, full stop") (emphasis added). Plaintiffs claim that

10

*Aldana* actually supports their claim but ignore the clear distinction between the video games sold by GameStop for entertainment purposes (which the court concluded fall in the "films or similar content" bucket) and the professional educational courses provided by the Websites.

The legislative history of the statute confirms that the VPPA is not all-encompassing of content and medium:

- "The *movies* we view in the privacy of our home … may reveal sensitive, personal information about us and should not be disclosed absent a compelling State interest…." Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947 and S. 2361 Before the Subcomm. on Cts., C.L., & the Admin. of Just. of the H. Comm. on the Judiciary and the Subcomm. on Tech. & the Law of the S. Comm. on the Judiciary, 100th Cong. 54 (1998) ("1988 VPPA Joint Hearing") (emphasis added).

- **"**[A] person would have to consent to the—to a release of such information as the precise titles of *movies* taken out of a video store." *Id.* at 32 (emphasis added).

- "There's a gut feeling that people ought to be able to read books and watch *films* without the whole world knowing. Books and *films* are the intellectual vitamins that fuel the growth of individual thought." *Id.* at 27.

- **"**The term 'video tape service provider' means any person engaged in the business … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, *such as laser disks, open-reel movies, or CDI technology*…." S. Rep. No. 100-599 (1988), at 12 (emphasis added).

Because the educational courses are not films and nor do they "have similar content" to the films Congress intended the VPPA to regulate, Plaintiffs' claim fails and the Complaint should be dismissed.

**III.    Plaintiffs fail to identify "specific video materials or services" to constitute PII as required by the VPPA.**

Plaintiffs do not provide any authority to support their assertion that video *subscriptions* as opposed to video *titles* meet the definition of PII under the VPPA, and Colibri is not aware of any such authority. Plaintiffs' attempted re-categorization that Plaintiff Damrau accessed "specific

11

video services" rather than a subscription is to no avail. Each case cited by Plaintiffs demonstrates that PII requires the name or title of the specific video. *See Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1020-21 (D. Minn. 2023) ("each time Mr. Feldman has watched video content on startribune.com, the Star Tribune 'simultaneously disclosed [his Facebook ID] **and the name of the video/content** that he viewed to Facebook via Facebook Pixel'" sufficient) (emphasis added); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 160 (S.D.N.Y. 2023) ("the FAC also adequately alleges that Today.com disclosed "specific video materials"—to wit, **each video's URL and name**.") (emphasis added); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1335 (N.D. Ga. 2023) (regarding an allegation that the defendant "sends the content name of the video the digital subscriber watched").

Despite Plaintiffs' assertion, *Gonzalez v. Cent. Elec. Co-op, Inc.*, No. CIV. 08-6236-HO, 2009 WL 3415235, at *11 (D. Or. Oct. 15, 2009), directly supports Colibri's position. In *Gonzalez*, the court found that "evidence indicating that plaintiff purchased one of fifteen movies does not constitute personally identifiable information." *Id.* Here, the Complaint does not identify the name of any video that Plaintiff Damrau actually viewed in the "NY Social Work All Access Pass" subscription. Similar to *Gonzalez*, an allegation that Plaintiff Damrau viewed an unidentified video within the list of videos provided in a subscription does not constitute PII. Accordingly, Plaintiffs' claim seeking damages for violations of the VPPA regarding the disclosure of PII as to subscriptions should be dismissed.

**IV.    An ordinary person could not decipher PII from the muddle of computer code that is purportedly transmitted by the Pixels.**

Even assuming *arguendo* that the VPPA did apply to the educational courses, the information that is allegedly disclosed by the Meta and TikTok Pixels (as demonstrated by Plaintiffs' screenshots) is meaningless to an ordinary person.

12

Plaintiffs assert Colibri's Motion fails because a Facebook ID can be used to identify a person, citing caselaw to that effect. Opp. at 13-14. Their opposition belabors this point for several pages, but misses the mark of Colibri's argument completely. Plaintiffs argue the Court should reject the ordinary person test because it is not the law of this Circuit. Opp. at 14. Yet, Plaintiffs set forth the First Circuit's standard (which notably is not the law of this Circuit), despite the majority of circuits and courts to address the issue of PII disclosure requiring that the disclosed information "*readily permit an ordinary person* to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). *See also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting "ordinary person" standard because it "better informs video service providers of their obligations under the VPPA."); *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022) (stating "the majority of the courts to address this issue" have found PII to mean "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior.") (internal citations omitted).

Plaintiffs' claim that a Facebook ID—an innocuous set of numbers embedded within lines of computer code—is sufficient under the VPPA skips a step; namely, consideration of *how* that Facebook ID is disclosed to the third-party in the first place. Here, Plaintiffs supplied examples of allegedly disclosed information via screenshots throughout the Complaint. Their argument that a Facebook ID constitutes PII erroneously assumes that any ordinary person could look at those jumbled screenshots of computer code and readily identify the Facebook ID and specific video information. Not to mention, they fail to explain how an ordinary person would know how or where to access the information from the screenshots in the first place. For the same reasons, Plaintiffs' argument that *Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1308 (N.D.

13

Fla. 2023) is inapplicable must fail. Plaintiffs argue the Complaint overcomes *Edwards* by alleging all Facebook IDs are personally identifying because every Meta subscriber has an FID, every Meta subscriber's FID is indexed to the subscriber's account page, and every subscriber's account page reveals the subscriber's name, birth date, gender, and phone number or email address. Opp. at 15. But again, Plaintiffs overlook how accessing the information identified in the Complaint's screenshots "does not require technical expertise" or how the pixel "readily permit[s] an *ordinary person* to identify Plaintiff's video-watching behavior." *Edwards*, 697 F. Supp. 3d at 1307-08.

The fact that Plaintiffs had to identify the alleged PII by providing red boxes in the screenshots that allege the disclosures proves Colibri's point: Plaintiffs themselves do not believe an ordinary person or even this Court could look at the screenshots and discern any form of PII; it is so obfuscated that they were compelled to affirmatively point it out. This is crucial because the ordinary person test does not contemplate that the recipient of information has the aid of counsel or another individual experienced in computer code to identify any PII therein. Requiring aid of a third party to identify and decipher the alleged PII in the first place confirms that the disclosed information does not "*readily permit* an ordinary person to identify a specific person's video-watching behavior". *In re Nickelodeon*, 827 F.3d at 267.  For these reasons, Plaintiffs fail to state a claim under the VPPA and it should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: April 3, 2025

*/s Paul M. Croker*
Paul Croker (Bar #57000)
Nick Slovikoski (Bar #73019)
pcroker@atllp.com
nslovikoski@atllp.com
ARMSTRONG TEASDALE LLP
2345 Grand Blvd., Suite 1500
Kansas City, Missouri 64108
Telephone: 816.221.3420
Fax: 816.221.0786

COUNSEL FOR COLIBRI GROUP, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 3, 2025, the foregoing was filed electronically using the Court's CM/ECF system which will serve a copy upon all parties of record.

*/s/ Paul Croker*