UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACEY DAMRAU and DANIELLE OSHEA, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br>  v.<br><br>COLIBRI GROUP, LLC,<br><br>  Defendant. | Civil Action No. 4:24-cv-01441 |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs Tracey Damrau and Danielle Oshea respectfully submit this Notice of Supplemental Authority to notify this Court of three decisions denying motions to dismiss based on similar allegations as present in this case. Those decisions are: *Manza v. Pesi*, No. 3:24-cv-00690-jdp (W.D. Wis. May 20, 2025), *Macalpine v. Onnit Labs, Inc.*, No. 1:24-cv-00933-DAE (W.D. Tex. May 14, 2025), and *Kueppers v. Zumba Fitness LLC*, No. 0:24-cv-61983, ECF No. 23 (S.D. Fla. May 8, 2025). Plaintiffs further state as follows:

1. The *Manza* decision involved similar Meta Pixel and tracking technology allegations, evaluated and rejected the *Solomon v. Flipps Media, Inc.* decision, and was issued by the United States District Court for the Western District of Wisconsin. Plaintiffs could not have cited this authority previously because the decision was issued on May 20, 2025, which was after the briefing had closed. A copy of the *Manza* opinion is attached hereto as **Exhibit A**.

2. In *Manza*, the Court considered and rejected the "ordinary person" standard for the definition of "personally identifiable information" as that term appears in the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710(a)(3).

3. The Court in *Manza* expressly engaged with the Second Circuit's reasoning in *Solomon*. It wrote:

> The courts that have adopted the "ordinary person" standard have identified little textual basis for the limitation they impose. *Solomon* acknowledged that the plain language of the VPPA was broad enough "to encompass computer code and digital identifiers," but the court concluded that the statute is "more naturally read as referring to information that would permit an ordinary person to learn another individual's video-watching history," 2025 WL 1256641, at *9, **without explaining why**.
>
> . . .
>
> Rather than rely on the text, the courts adopting an "ordinary person" test have concluded that the meaning of PII is ambiguous in the VPPA, and they rely on other tools of statutory construction to support a narrower reading. *See, e.g., Nickelodeon*, 827 F.3d at 284. But the reasons they provide are not persuasive.

1

First, they say that a narrower interpretation is supported by legislative history and the purpose of the VPPA. For example, *Nickelodeon* quotes extensively from congressional committee reports. *See* S. Rep. No. 100-599 (1988) (Senate Report); Video and Library Privacy Protection Act of 1988: Hearing on H.R. 4947 & S. 2361 Before the Subcomm. on Courts, Civil Liberties & the Admin. of Justice of the H. Comm. on the Judiciary & the Subcomm. on Tech. & the Law of the S. Comm. on the Judiciary, 100th Cong. (1988). **But there are no references to the "ordinary person" standard or anything similar in those reports**. . .

**If anything, the text, purpose, and history of the statute suggest that Congress intended the meaning of PII to be expansive** so that it could adapt to changing technology. Even *Nickelodeon* acknowledged that there was support for such a view. *See* 827 F.3d at 285 ("[T]here are portions of the legislative history that might be read to support . . . a view [that] Congress intended to pass a broad statute that would protect consumer privacy even as video-watching technology changed over time.").

Second, *Nickelodeon, Solomon, and Eichenberger* focused on the specific impetus for the VPPA—a reporter's disclosure of Judge Robert Bork's video tape rental history—and the state of technology in 1988 . . . **Neither of these observations is a reason to interpret the VPPA narrowly.** "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998). **The question is not whether Congress had a plaintiff's specific problem in mind when it enacted the statute, but whether the statute uses language broad enough to cover the problem.** This court has concluded that it does.

Third, *Nickelodeon* and *Solomon* reviewed other statutes that include definitions of PII. They focused on the Children's Online Privacy Protection Act (COPPA) in particular, **noting that the definition of PII in that statute is a discrete list of items and that the Federal Trade Commission may add more items, one of which is "[a] persistent identifier, such as a customer number held in a cookie or a processor serial number, where such identifier is associated with individually identifiable information."** *Nickelodeon*, 827 F.3d at 287. *Nickelodeon* observed that the VPPA "does not empower an administrative agency to augment the definition of 'personally identifiable information' in light of changing circumstances or new technologies. The meaning of that phrase in the Act is, it would appear, more static." *Id. Solomon* made the same point. 2025 WL 1256641, at *10. **Again, the courts did not explain how their observation supported an "ordinary person" standard. "Static" does not mean "narrow."** COPPA is not instructive because its definition of PII is a laundry list; **VPPA's more general definition does not need to be "updated."**

2

Fourth, *Nickelodeon* and *Solomon* made a similar argument related to Congress's failure to amend the definition of PII when it amended other provisions of the VPPA in 2013 . . . **This argument again rests on the false assumption that the VPPA defines PII narrowly, so it was necessary to amend the statute to keep up with modern technology. But as this court has already explained, the VPPA is already broad enough so that it does not need to be updated.**

**In any event, the Supreme Court has cautioned against using Congress's failure to amend a statute as evidence of legislative intent** . . . **Even if subsequent legislative history were an appropriate basis for statutory interpretation, neither Nickelodeon nor Solomon cite any legislative reports or other evidence shedding light on why Congress chose not to amend the definition of PII in the VPPA.**

Fifth, and finally, *Nickelodeon*, *Solomon*, and *Eichenberger* were concerned about the potential breadth of the VPPA and unfairness to video tape service providers

. . .

This concern is misplaced in two respects. **First, the "ordinary person" standard does turn on circumstances outside the video tape service provider's control and it does not provide clear guidance to a video tape service provider because it rests on what a hypothetical third party may do with the information it received, and it requires the video tape service provider to speculate on the abilities of an "ordinary person." How computer savvy is the "ordinary person?" What access to information does she have? How motivated is she to obtain that information? These are all questions that a video tape service provider must ask itself under the "ordinary person" standard, and they do not have obvious answers. For example, courts have come to different conclusions about whether an "ordinary person" could identify a video customer using a Facebook ID.** *Compare Solomon*, 2025 WL 1256641, at *10–11 *with Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). In contrast, a test that asks whether the information aids in uniquely identifying the customer is objective and focuses on the nature of the information rather than on speculation about a third party.

**Second, concerns about unfairness to video tape service providers are addressed by the VPPA's intent element. A video tape service provider may be held liable only if it "knowingly discloses" PII.** The word "knowingly" generally applies to all subsequently listed elements of a statute. *See Flores-Figueroa v. U.S.*, 556 U.S. 646, 650 (2009). So if a video tape service provider is not aware either that it is disclosing certain information or that the information it is disclosing can be used to identify an individual's video purchases, the provider did not violate the VPPA.

*See id*. at 10-15 (emphasis added).

3

4.  After thoroughly examining the flaws in the decisions of the Second, Third, and Ninth Circuits, the *Manza* court further explained that:

> **There is another reason why the "ordinary person" standard is not persuasive, which is that it creates a substantial loophole in the VPPA's coverage and allows easy evasion, at least as the standard is understood by Pesi.** Under Pesi's view, a video tape service provider is free to disclose a customer's video purchases to social media companies, data brokers, or anyone else, even when the provider knows that the third party will be able to easily identify the customer, so long as the provider uses a "code" that an "ordinary person" could not decipher.
>
> . . .
>
> **[Defendant's] view makes no sense. The purpose of the VPPA is to prevent video tape service providers from disclosing information that allows third parties to identify a customer's video purchases. That purpose is not served by allowing video tape service providers and third parties to knowingly evade the statute by disclosing a customer's identity with a number unknown to the "ordinary person" but known by the recipient. It is rarely the "ordinary person" who is seeking to invade a consumer's privacy.** More commonly, it is entities like those discussed in Manza's amended complaint. If the court were to adopt Pesi's view, it would suggest that even Social Security numbers are not PII because an "ordinary person" might not be able to use the number to identify an individual without significant effort. *See In re Vizio, Inc., Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1224–25 (C.D. Cal. 2017).

*See id*. at 16-17 (emphasis added).

5.  The *Macalpine* decision also involved similar Meta Pixel allegations and was issued by the Honorable David Alan Ezra on the United States District Court for the Western District of Texas. Plaintiffs could not have cited this authority previously because the decision was issued on May 14, 2025, which was after the briefing had closed. A copy of the *Macalpine* opinion is attached hereto as **Exhibit B**.

6.  In *Macalpine*, the court explained that "[e]ven assuming the 'ordinary person' standard applies here, courts have also readily found that a Facebook ID is a 'unique identifier that

4

is enough, on its own to identify a person' for purposes of the VPPA . . . The Court finds these cases persuasive and concludes the same."

7. The court in *Macalpine* further examined the "knowing" disclosure allegations and concluded that "[t]aking the Plaintiffs allegations as true, the Court finds Plaintiffs sufficiently allege that Defendant knowingly disclosed their PII by intentionally installing the Meta Pixel on its Website."

8. The *Kueppers* decision also involved similar Meta Pixel allegations and was issued by the United States District Court for the Southern District of Florida. Plaintiffs could not have cited this authority previously because the decision was issued on May 8, 2025, which was after the briefing had closed. A copy of the *Kueppers* opinion is attached hereto as **Exhibit C**.

9. In *Kueppers*, the Third Circuit's decision was questioned by the court when it explained that:

> There is evidence from the *Nickelodeon* opinion that the Third Circuit didn't specifically raise the standard for who needed to be able to tie the disclosure to an individual person. Instead, the court's holding seems to be about the ease with which one could draw the connection between the numerical identifier disclosed and the individual video consumer. *See Nickelodeon*, 827 F.3d at 284 ("Our review of the legislative history convinces us that Congress's purpose in passing the Video Privacy Protection Act was quite narrow: to prevent disclosures of information that would, with little or no extra effort, permit an *ordinary recipient* to identify a particular person's video-watching habits.") (emphasis added). **This "ordinary recipient" language suggests that its holding applies to any recipient, not an "ordinary person" in the legal sense of the term.**

*See id.*, at page 8 (emphasis added, italics in original).

10. The court in *Kueppers* then rejected the ordinary person standard, explaining:

> **In the absence of binding precedent, the Court finds ample support from case law and from the statute itself for the proposition that, so long as the person or entity receiving the disclosure could reasonably and foreseeably identify which videos a person has obtained, Plaintiff sufficiently alleges a violation of the statute**. *See Yershov*, 820 F.3d at 486. Here, the Complaint alleges Defendant intentionally installed the Meta Pixel which transmitted to Meta Plaintiffs'

5

Facebook IDs in conjunction with the URL link to the training course purchased. And certainly, (contrary to Defendant's ancillary point), "Meta can easily 'link' the FID to a specific user." *Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, *4 (E.D. La. Nov. 3, 2023); see also Compl. ¶ 51 (quoting Meta's developer guide as stating that "a Meta Pixel installed on a company's website allows Meta to 'match [] website visitors to their respective Facebook User accounts.'").

**In the alternative, Plaintiffs argue that, to the extent there is an ordinary person requirement, Plaintiff has alleged an ordinary person could tie the videos to the consumers. The Court agrees.** *See Martinez v. D2C, LLC*, No. 23-21394-CIV, 2023 WL 6587308, at *4 (S.D. Fla. Oct. 10, 2023) (assuming without deciding the ordinary person standard applied, but finding Plaintiff nonetheless stated a claim where it alleged the Facebook ID was disclosed because "[t]he [Facebook ID] is a unique identifier that is enough, on its own, to identify a person.") (quoting *Sellers*, 2023 WL 4850180 at *4).

*See id.*, at page 9-10 (emphasis added).

Dated: May 21, 2025                                         Respectfully submitted,

**HEDIN LLP**

/s/ *Elliot O. Jackson*
Elliot O. Jackson
MO Reg. No. #1034536FL
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:    (305) 357-2107
Facsimile:     (305) 200-8801
ejackson@hedinllp.com

6