# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC MACALPINE; ANDREW GREMMO; and BRIAN HICKERSON individually and on behalf of all others similarly situated, | § § § § § § | No. 1:24-cv-00933-DAE |
| *Plaintiffs,* | § § | |
| vs. | § § | |
| ONNIT LABS, INC., | § § § | |
| *Defendant.* | § | |

ORDER DENYING MOTION TO DISMISS

Before the Court is Defendant Onnit Labs, Inc.'s ("Defendant") Motion to Dismiss, filed on November 12, 2024. (Dkt. # 14.) On November 26, 2024, Plaintiffs Eric MacAlpine, Andrew Gremmo, and Brian Hickerson ("Plaintiffs") filed their response in opposition to the motion. (Dkt. # 16.) On December 10, 2024, Defendant filed its reply in support. (Dkt. # 17.)

The Court finds these matters suitable for disposition without a hearing. After careful consideration of the filings and relevant case law, the Court, for the following reasons, **DENIES** Defendant's Motion to Dismiss. (Dkt. # 14.)

BACKGROUND

This Video Privacy Protection Act lawsuit arises out of Defendant Onnit Labs Inc.'s ("Onnit") alleged disclosure of its consumers' "personally

1

identifiable information" to Meta Platforms, Inc. ("Meta"). (Dkt. # 12 at 2.) The alleged personally identifiable information includes both the consumers' Facebook IDs and URLs identifying and containing the names of the videos they "requested or obtained" from Defendant. (Id. at 2–3.)

Defendant is an Austin-based company that sells fitness products through its website, www.onnit.com (the "Website"), including prerecorded exercise programs. (Id. at 9, 20–22.) On May 14, 2023, November 13, 2023, and February 15, 2023, respectively, Plaintiffs Mr. Gremmo, Mr. MacAlpine and Mr. Hickerson allegedly purchased prerecorded video material from Defendant's Website. (Id. at 4, 6, 7.) Plaintiffs allegedly maintained active Meta (formerly "Facebook") accounts at the time they purchased the prerecorded video material on Defendant's Website. (Id. at 4–7.)

Plaintiffs allege that Defendant knowingly installed "Meta Pixel" on its Website, which is a "unique string of code that companies can embed on their websites to monitor and track the actions taken by visitors to their websites and to report them back to Meta." (Id. at 19.) The Meta Pixel program allegedly allows companies, like Defendant, to build detailed profiles about their customers and to serve them with highly targeted advertising. (Id.) Plaintiffs allege that whenever a person with a Meta account purchases prerecorded video material from Defendant's Website, Defendant knowingly uses Meta Pixel to disclose to Meta its

consumers' Facebook IDs and the names of the videos those consumers requested or obtained. (Id. at 22–23.) As alleged, a Facebook ID is a unique and persistent identifier that allows anyone to look up the user's unique Meta profile and thus identify the user by name. (Id. at 19.)

Plaintiffs allege that at all relevant times, Defendant knew that the Meta Pixel it intentionally installed on its Website was disclosing its customers' "Private Viewing Information" to Meta. (Id. at 24.) Plaintiffs allege that the Private Viewing Information constitutes "the specific videos that a particular person purchased on Defendant's Website." (Id. at 3.)

On August 15, 2024, Mr. Gremmo and Mr. MacAlpine filed this class action lawsuit, alleging that Defendant disclosed Plaintiffs' personally identifiable information to Meta in violation of the Video Privacy Protection Act ("VPPA"). (Dkt. # 1.) On September 10, 2024, Plaintiffs amended their complaint. (Dkt. # 5.) On October 9, 2024, Defendant filed a motion to dismiss. (Dkt. # 6.) On October 23, 2024, Plaintiffs filed their Second Amended Complaint (the "Complaint"), adding Plaintiff Brian Hickerson. (Dkt. # 12.) On November 12, 2024, Defendant filed the instant motion to dismiss. (Dkt. # 14.) On November 26, 2024, Plaintiffs filed their response. (Dkt. # 16.) On December 10, 2024, Defendant filed a reply. (Dkt. # 17.) On March 7, 2025, Plaintiffs filed a Notice of Supplemental Authority. (Dkt. # 25.) Thus, the motion is ripe for consideration.

3

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he [C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,"

4

and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.")

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted).

## DISCUSSION

In 1988, Congress enacted the Video Privacy Protection Act ("VPPA") in response to a profile of then-Supreme Court nominee Judge Robert H. Bork that was published by a Washington, D.C. newspaper during his confirmation hearings. S. Rep. No. 100–599, at 5 (1988), reprinted in 1988 U.S.C.C.A.N. 4342–1. The profile contained a list of 146 films that Judge Bork and his family had rented from a video store. Id. Members of Congress denounced the disclosure as repugnant to the right of privacy. Id. at 5–8. Congress then passed the VPPA "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." Id. at 1.

5

To effectuate this purpose, Congress in the VPPA created a civil remedy against a "video tape service provider" for "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

To state a claim under the VPPA, plaintiff must allege that defendant (1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer. See 18 U.S.C. § 2710(b)(1). A "video tape service provider" is defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). "Personally identifiable information" is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Finally, a "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

Defendant moves to dismiss Plaintiffs' Second Amended Class Action Complaint on the basis that Plaintiffs fail to state a claim for a violation of the VPPA. (Dkt. # 14 at 2.) Defendant argues (1) the Complaint does not allege any facts to support that the information allegedly disclosed qualified as personally

6

identifiable information under the VPPA, and (2) the Complaint does not plausibly allege that Defendant knowingly disclosed the metadata at issue because it does not allege that Defendant ever possessed that information. Defendant does not contest that Plaintiffs are consumers under the VPPA.

A. <u>Personally Identifiable Information</u>

The Fifth Circuit has yet to identify what qualifies as personally identifiable information ("PII") in the context of the VPPA. Indeed, there does not appear to be a uniform definition, but "the majority of the courts to address this issue" have found PII to mean "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." <u>Frawley v. Nexstar Media Group Inc.</u>, No. 3:23-CV-2197-L, 2024 WL 3798073, at *8 (N.D. Tex. July 22, 2024), R. & R. adopted, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024) (quoting <u>Wilson v. Triller, Inc.</u>, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022)). Courts have indicated "that providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA." <u>Aldana v. GameStop, Inc.</u>, No. 22-CV-7063-LTS, 2024 WL 708589, at *8 (S.D.N.Y. Feb. 21, 2024) (cleaned up). And "[c]ourts have uniformly held Facebook IDs to constitute PII under the VPPA, particularly where . . . the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and

7

name." Golden v. NBCUniversal Media, LLC, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023).

Here, Plaintiffs allege that Defendant disclosed to Meta the Facebook IDs of visitors to its Website, and that its disclosure of those Facebook IDs was paired with the URLs of the webpages where consumers watched or purchased prerecorded videos from Defendant. (Dkt. # 12 at 18–24.) As alleged in the Complaint, the URLs identify and contain the names of the videos requested or obtained by consumers. (Id. at 22–23.) Plaintiffs contend their Facebook IDs are personally identifying to Meta because they are indexed to an individual's Meta account, which includes the individual's first and last name, birth date, gender, and phone number or email address. (Id. at 19.) According to Plaintiffs, to the wider public, Facebook IDs are personally identifying because anyone in possession of a Facebook ID can use it to identify a person's Facebook account, which displays their name and other identifying information. (See, e.g., id.)

Relying on out of district cases, Defendant argues that a Facebook ID cannot be used to identify a person unless their Facebook profile contains both PII and is a public profile. (Dkt. # 14-1 at 9) (citing Heerde v. Learfield Commc'ns, LLC, No. 2:23-CV-04493-FLA, 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024)). As alleged, only Mr. Hickerson's profile was "set to public status when he purchased the prerecorded video materials from Defendant's Website," so there is

8

no allegation that "anyone could locate" Mr. Gremmo's or Mr. MacAlpine's Facebook profiles at all.[1]  (Id. at 14–15.)

Defendants further contend Plaintiffs' Facebook IDs are not "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." (Id. at 13–17.)  Thus, according to Defendant, Plaintiffs' Facebook IDs do not constitute PII under the VPPA.

In Frawley v. Nexstar Media Group Inc., an analogous case in the Northen District of Texas, the court found that the plaintiff sufficiently stated a claim under the VPPA at the motion to dismiss stage by alleging that his Facebook ID was disclosed alongside a URL containing a video title. Id. at *8.  And Plaintiffs point to numerous other cases in which courts similarly concluded a Facebook ID is sufficient to constitute PII under the VPPA.  (See Dkt. # 16 at 11–13); see e.g., Belozerov v. Gannett Co., 646 F.Supp.3d 310, 314 (D. Mass. 2022) (collecting cases); Li v. Georges Media Group LLC, No. CV 23-1117, 2023 WL 7280519 (E.D. La. Nov. 3, 2023) (same).

Even assuming the "ordinary person" standard applies here, courts have also readily found that a Facebook ID is a "unique identifier that is enough, on its own to identify a person" for purposes of the VPPA.  See Martinez v. D2C,

---

[1] With respect to Plaintiffs MacAlpine and Gremmo's Facebook profile statuses, the Court agrees that the issue presents a factual dispute which cannot be resolved on a motion to dismiss.  (Dkt. # 16 at 20.)

9

LLC, No. 23-21394-CIV, 2023 WL 6587308, at *4 (S.D. Fla. Oct. 10, 2023) (internal citations omitted).  The Court finds these cases persuasive and concludes the same.

Accordingly, the Court finds Plaintiffs sufficiently allege their Facebook IDs and the URLs of the video materials they requested or obtained from Defendant constitute PII within the meaning of the VPPA.

B. Knowing Disclosure

The VPPA provides that a "video tape service provider who *knowingly* discloses . . . personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C.A. § 2710(b)(1) (emphasis added).  The statute does not define what knowledge requires. However, the Northern District of California held in In re Hulu Priv. Litig. that the term connotes "actual knowledge."  86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). "'[K]nowingly' means consciousness of transmitting the private information.  It does not merely mean transmitting the code." Id.

Defendant argues that Plaintiffs do not and cannot allege that it ever had possession of their Facebook IDs such that Defendant could knowingly disclose their Facebook IDs to Meta.  (Dkt. # 14-1 at 18.)  Defendant argues the

10

Complaint makes clear that it was the Meta Pixel[2] that collected the Plaintiffs' Facebook IDs and transferred to Meta, not Defendant. (Id.)

Plaintiffs respond that the Complaint alleges throughout that Defendant knowingly disclosed its consumers' PII to Meta by installing the Meta Pixel on its Website in order to improve its marketing and advertising abilities. (Dkt. # 16 at 21.) Specifically, Plaintiffs allege "Defendant intentionally programmed its Website to include the Meta Pixel code in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta. The Meta Pixel code systematically transmits to Meta the F[acebook] ID of each person with a Meta account who purchases prerecorded video material on its Website, along with the specific title of the prerecorded video material that the person purchased." (Dkt. # 12 at 23.) In the Complaint, Plaintiffs also allege "[a]t all relevant times hereto, Defendant knew that the Meta Pixel was disclosing its customers' Private Viewing Information to Meta." (Id. at 24.)

Other courts have held that a defendant who installs the Meta Pixel on its website knowingly makes disclosures to Meta, just as Plaintiffs' Complaint alleges. See Aldana, 2024 WL 708589, at *9 ("By installing the [Facebook

---

[2] Defendant also argues that by being Meta/Facebook users, Plaintiffs consented to Meta's data collection practices. (Id. at 20.) Because there is a fact issue, the Court agrees with Plaintiffs that Meta's privacy policy does not have a bearing on Plaintiffs' claims at this stage of the proceeding. (Dkt. # 16 at 24.)

11

Tracking] Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within") (internal citations omitted).

And in Frawley, the court similarly found the following allegations sufficient to state a claim that the defendant knowingly disclosed the plaintiff's PII: (1) the defendant intentionally installed the "Pixel and Conversions API" on its website to "track and transmit their Personal Viewing Information to third parties", and (2) "[a]t all relevant times, the defendant knew that the Facebook pixel disclosed Personal Viewing Information to Facebook." 2024 WL 3798073, at *9.

Taking the Plaintiffs allegations as true, the Court finds Plaintiffs sufficiently allege that Defendant knowingly disclosed their PII by intentionally installing the Meta Pixel on its Website. As such, Plaintiffs have plausibly alleged the elements of a VPPA claim. Therefore, Defendant's Motion to Dismiss for failure to state a claim is **DENIED.**

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint. (Dkt. # 14.)

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, May 14, 2025.

_____
David Alan Ezra
Senior United States District Judge