**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| TRACEY DAMRAU, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>COLIBRI GROUP, LLC.<br><br>    Defendant. | Case No. 4:24-cv-01441-SEP |

**DEFENDANT'S NOTICE OF SUPPLEMENTAL
AUTHORITY REGARDING MOTION TO DISMISS**

Defendant respectfully submits notice of the attached opinion from the Second Circuit on May 1, 2025, issued after Plaintiffs and Defendant fully briefed Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docs. 16, 17, 20, 25) and which this Court may consider relevant to Defendants' Motion.[1]

In both its Memorandum in Support and the Reply, Defendant explained that an ordinary person could not decipher Personally Identifiable Information (PII) within the muddle of computer code that is purportedly transmitted by the Pixel, as demonstrated by screenshots throughout the Complaint. *See* Dkt. 17 at 13-15; Dkt. 25 at 12-6.

In doing so, Defendant noted that the "ordinary person" standard for defining PII is the

---

[1] Plaintiffs filed a Notice of Supplemental Authority on May 21, 2025 (Doc. 26.) However, the district court cases they provide do not reflect the majority approach. The analysis in those cases has been rejected by three of the four circuit courts of appeal who adopted the ordinary person standard for PII because "[i]t does not make sense that a video tape service provider's liability would turn on circumstances outside of its control and the level of sophistication of the third party." *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 52 (2d Cir. 2025). *See also Lee v. Springer Nature America, Inc.*, No. 24-cv-4494, 2025 WL 692152 at *15 (S.D.N.Y. Mar. 4, 2025) (rejecting ordinary person standard just weeks before Second Circuit adopted it).

leading standard adopted by the majority of courts to address the issue, including the Third and Ninth Circuits. The Second Circuit has since adopted this standard as well, joining two other circuit courts of appeal and many other district courts in rejecting the First Circuit's "reasonableness standard", which Plaintiffs advocate for in their Opposition. *See* Doc. 20 at 14-15; Doc. 26.

In *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), the Second Circuit analyzed the VPPA and various authorities supporting both standards, concluding "we adopt the Third and Ninth Circuits' ordinary person standard." *Id*. at *8. The Second Circuit went on to apply this standard and held that the Pixel's transmission of computer code containing purported PII (including a Facebook ID) embedded within it does not violate the VPPA:

> Turning to the facts of this case, we consider whether the Complaint plausibly alleges that FITE's disclosure of Solomon's FID and video titles "would, with little or no extra effort, permit an ordinary recipient to identify [Solomon's] video-watching habits." *In re Nickelodeon*, 827 F.3d at 284. We conclude it does not.
>
> The information transmitted by FITE to Facebook via the Pixel's PageView is set forth in the "exemplar screenshot" reproduced in the Complaint. See page —— supra; Joint App'x at 20. **The exemplar depicts some twenty-nine lines of computer code, and the video title is indeed contained in Box A following the GET request. The words of the title, however, are interspersed with many characters, numbers, and letters. It is implausible that an ordinary person would look at the phrase "title% 22% 3A% 22-% E2% 96% B7% 20The% 20Roast% 20of% - 20Ric% 20Flair" -- particularly if the highlighting in Box A is removed -- and understand it to be a video title. It is also implausible that an ordinary person would understand, "with little or no extra effort," the highlighted portion to be a video title as opposed to any of the other combinations of words within the code, such as, for example, "% 9C% 93% 20In% 20the% 20last% 20weekend% 20of% 20-July% 2C.**" *Id*.; Joint App'x at 20.
>
> Nor does the Complaint plausibly allege that an ordinary person could identify Solomon through her FID. Because the redacted sequence of numbers in the second line of Box B is not labeled, the FID would be just one phrase embedded in many other lines of code. And if the numbers in the exemplar were not redacted, what an individual would see is, for example, a phrase such as "c_user=123456" or "c_user=00000000." **Although a section of the code in Box A does state "[h]ost: www.facebook.com," it is not plausible that an ordinary person, without the annotation of Box B, would see the "c_user" phrase on FITE's servers and conclude that the phrase was a person's FID.**
>
> **Notably, the Complaint lacks any details about how an ordinary person might access the information on the Pixel's PageView**. But even assuming, arguendo, that an ordinary person could somehow gain access to the Pixel's PageView, the Complaint is also devoid of any details about how an ordinary person would use an FID to identify Solomon. The Complaint merely states that entering "facebook.com/[Solomon's FID]" into any web

browser would result in Solomon's personal Facebook profile, and that "[t]his basic method of accessing a person's Facebook profile is generally and widely known among the public." Joint App'x at 21. *But see In re Nickelodeon*, 827 F.3d at 283 ("To an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person."). Accordingly, **we are not persuaded that an FID is "vastly different," Appellant Br. at 29, from the unique device identifiers in *Nickelodeon*, 827 F.3d at 262, or the Roku device serial numbers in *Eichenberger*, 876 F.3d at 979.**

136 F.4th at 54-55 (emphasis added). The Second Circuit's analysis and holding is relevant here because the same arguments are made in Defendant's Motion to Dismiss, based on similar screenshots, which Defendant believes to be dispositive of Plaintiff's claim.

Defendant respectfully submits the Second Circuit's opinion in *Solomon*, attached hereto as Exhibit 1, for the Court's consideration regarding Defendant's Motion to Dismiss.

Dated: May 27, 2025   /s Nicholas D. Slovikoski
Paul Croker (Bar #57000)
Nick Slovikoski (Bar #73019)
pcroker@atllp.com
nslovikoski@atllp.com
ARMSTRONG TEASDALE LLP
2345 Grand Blvd., Suite 1500
Kansas City, Missouri 64108
Telephone: 816.221.3420
Fax: 816.221.0786

COUNSEL FOR COLIBRI GROUP, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 27, 2025, the foregoing was filed electronically using the Court's CM/ECF system which will serve a copy upon all parties of record.

/s/ Nicholas D. Slovikoski