**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TRACEY DAMRAU and DANIELLE OSHEA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>COLIBRI GROUP, LLC,<br><br>Defendant. | Civil Action No. 4:24-cv-01441 |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITIES**

Plaintiffs Tracey Damrau and Danielle Oshea ("Plaintiffs"), by and through undersigned counsel, submit this Notice of Supplemental Authorities in response to Defendant's Notice of Supplemental Authority. *See* ECF No. 34. This Court is not bound by either of the decisions mentioned by Defendant when evaluating the current motion to dismiss. Plaintiffs also write to notify this Court of five decisions that are more persuasive and instructive on the questions presently before this Court. Those decisions are: *Cole v. LinkedIn Corp.*, No. 25-CV-01097-PCP, 2025 WL 2963221 (N.D. Cal. Oct. 20, 2025) (attached as **Exhibit A**); *Goodman v. Hillsdale College*, No. 1:25-cv-417, 2025 WL 2941542 (W.D. Mich. Oct. 17, 2025) (attached as **Exhibit B**); *Nguyen v. Elsevier, Inc.*, No. 25-cv-00825-NC, 2025 WL 2901059 (N.D. Cal. Oct. 7, 2025) (attached as **Exhibit C**); *Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710, 2025 WL 2045644 (S. D. Ohio July 22, 2025) (attached as **Exhibit D**); and *Cochenour v. 360training.com, Inc.*, No. 1:25-cv-00007-RP (W.D. Tex. Nov. 3, 2025) (attached as **Exhibit E**). Plaintiffs could not have cited these authorities in their briefing because they were issued after their deadline to oppose

Defendant's Motion to Dismiss.

Plaintiffs state as follows:

1. First, the *Cole* decision is directly instructive because it (1) involves similar Meta Pixel allegations, (2) evaluated whether a complaint adequately alleged LinkedIn was a "video tape service provider" under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and (3) utilized the ordinary person standard (which Defendant relies upon) to conclude that the complaint adequately alleged the disclosure of personally identifiable information. Regarding the latter two points, the court in *Cole* rejected the very arguments that Defendant now raises by explaining:

a. "The complaint contains no discussion of LinkedIn's services other than the video content on LinkedIn Learning. The complaint thus casts LinkedIn Learning as substantially—indeed, exclusively—involved in conveying audiovisual content and as 'significantly tailored' to that purpose. **LinkedIn's argument to the contrary 'raises factual questions' about the nature and focus of its services that are 'premature at the motion to dismiss stage.'**" 2025 WL 2963221, at *3 (quoting and citing *Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023)).

b. "LinkedIn also argues that any information it disclosed about Cole's viewing history was paired with voluminous other information and that an ordinary person would therefore have been unable to sift through the morass of data to find the pieces that identified Cole and her video-watching behavior. Again, LinkedIn's argument relies on facts not alleged in the complaint, which does not discuss the other data disclosed alongside Cole's personally identifiable information. This argument thus raises factual disputes better resolved on a motion for summary judgment. And in any case, it is not clear that the manner in which a defendant discloses personally identifiable information is relevant. . . .Nothing in the statute suggests that a defendant can escape liability by disclosing such information in a format that makes it less likely that an ordinary person receiving the information would actually use it to identify an individual's video-watching behavior. . . In sum, Cole has plausibly alleged that LinkedIn disclosed her personally identifiable information by transmitting the URLs of videos Cole watched on LinkedIn Learning 'along with' her Facebook ID, which together would 'readily permit an ordinary person to identify [Cole] 's video-watching behavior.' . . . Plaintiff could not have cited Cole previously because the decision was issued on October 20, 2025, which was after the briefing had closed." *Id*. (citing and quoting

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017).

2. Second, the *Goodman* decision is directly instructive because it (1) involves similar Meta Pixel allegations, (2) evaluated whether a complaint adequately alleged that a non-profit college was a "video tape service provider" under the VPPA, and (3) rejected ordinary person standard (which Plaintiffs argue is the proper course of action by this Court) to conclude that the complaint adequately alleged the disclosure of personally identifiable information. Regarding the latter two points, the court in *Goodman* rejected the very arguments that Defendant raises by explaining:

a. "The College also suggests a different reason why it is not engaged in the business of video delivery: its primary purpose is in-person education, and the video lectures are merely a side project. But **nothing in the VPPA limits liability to entities that primarily distribute videos.** Rather, ''video tape service provider' is defined broadly to include even those businesses that dabble in video rentals.' *NBA*, 118 F.4th at 549; *see also* S. Rep. No. 100-599, at 12 (VPPA Senate Committee Report) (recognizing that the VPPA would apply to "a department store that sells video tapes" along with other products); *Salazar v. Paramount Glob.*, 133 F.4th 642, 655 (6th Cir. 2025) (Bloomekatz, J., concurring and dissenting in part) ("[A] 'video tape service provider' need not be exclusively, or even primarily, engaged in the 'rental, sale, or delivery of prerecorded cassette tapes or similar audio visual materials.'"); *Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705, at *1–2 (N.D. Cal. Apr. 5, 2019) (plaintiffs stated VPPA claim against Walmart because it sells DVDs in addition to other products).

**The College also contends that its online lectures do not put it in the business of video delivery because they are essentially a form of marketing for its other products.** Some courts have held that defendants are not video tape service providers because the videos they deliver are purely for marketing purposes. *See Carroll v. Gen. Mills, Inc.*, No. CV 23- 1746 DSF (MRWX), 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023) (General Mills was not engaged in the business of delivering videos because the videos on its website were only intended to advertise its food products and increase its brand presence); *Cantu v. Tractor Supply Co.*, No. 23-CV-3027, 2024 WL 1601257, at *4 (C.D. Cal. Mar. 21, 2024) (tractor supply company that posted "inspirational" videos to raise "brand awareness" was not a video tape service provider); *Hernandez v. Container Store, Inc.*, No. 23-CV-5067, 2024 WL 72657, at *2 (C.D. Cal. Jan. 3, 2024) (hosting advertisements for own products does not make defendant a video tape service provider). But these cases do not imply that a defendant can never be a video tape service provider if its videos

support its marketing efforts. Rather, they suggest that a defendant's business is usually not significantly tailored to the purpose of video delivery when the only videos they make are advertisements. **And while the College's lectures function to some degree as advertisements, they are not just advertisements. The lectures have an educational purpose entirely independent of their marketing function.** This purpose is enough to establish that the College's work is significantly tailored to the production and delivery of videos. *Cf. Shapiro v. Peacock TV*, No. 23-CV-6345 (KMK), 2025 WL 968519, at *6 (S.D.N.Y. Mar. 31, 2025) (VPPA applied where plaintiffs watched online trailer that served as advertisement for defendant's television shows).

**In sum, Plaintiffs have sufficiently alleged that the College is engaged in the business of delivering online videos and is therefore a "video tape service provider" under the VPPA**." 2025 WL 2941542, at *5.

b. **"Moreover, the Court agrees with the persuasive reasoning of the district court in *Manza*, which rejected application of the ordinary person standard.** 784 F. Supp. 3d at 1116–23. As that court observed, "[t]he courts that have adopted the 'ordinary person' standard have identified little textual basis for the limitation they impose." Id. at 1119. Courts have justified the ordinary person standard based on the fact that the VPPA only prohibits "knowing[ ] disclos[ure]," which frames "disclosure from the perspective of the disclosing party." *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). But "[t]he intent element places a limitation on when a video tape service provider can be held liable for disclosing PII; the element does not explain what PII is." *Manza*, 784 F. Supp. 3d at 1119. Moreover, if (as here) the defendant knows that the recipient of the disclosure can readily use the information to determine a user's identity, the knowledge requirement is satisfied regardless of whether the ordinary person standard is met. The VPPA's "purpose is not served by allowing video tape service providers and third parties to knowingly evade the statute by disclosing a customer's identity with a number unknown to the 'ordinary person' but known by the recipient." *Id*. at 1122. Thus, "[c]ourts across the country . . . have indicated that providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA." *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *8 (S.D.N.Y. Feb. 21, 2024). **Furthermore, even if the Court adopted the "ordinary person" standard, the information disclosed by the College would qualify as PII.**" 2025 WL 2941542, at *8.

3. Third, the *Nguyen* decision is directly instructive because it (1) involves similar Meta Pixel allegations and (2) utilized the ordinary person standard (which Defendant relies upon) to conclude that the complaint adequately alleged the disclosure of personally identifiable information. Regarding the latter point, the court in *Nguyen* rejected the very arguments that

Defendant raises by explaining:

> a. The cases cited by Defendants analyze whether, and when, the disclosure of a Facebook ID through the Meta Pixel constitutes the disclosure of PII. This is because Facebook IDs—strings of numbers—beg the question of whether an ordinary person can discern personal and identifying information about a consumer from these IDs, whether by accessing their Facebook page that contains such information or otherwise. *See Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *Sellers v. Bleacher Report, Inc.*, No. 23-cv-00368-SI, 2023 WL 4850180, at *4–5 (N.D. Cal. July 28, 2023). But Plaintiffs do not allege that the Meta Pixel disclosed Nguyen's Facebook ID to Meta. Rather, **Plaintiffs allege that each time Nguyen viewed a video on Osmosis, Elsevier disclosed to Meta in a single transmission her full name, email address, and the title of the video she viewed.** FAC ¶ 38. **When combined with information disclosing a consumer's video-watching behavior, names and email addresses can identify a person and therefore qualify as PII**. *See Eichenberger*, 876 F.3d at 986; *Ghanaat*, 689 F. Supp. 3d at 720; *Lee*, 773 F. Supp. 3d at 772–73. As such, it is not clear why, as Defendants argue, Plaintiffs need to allege any information concerning Nguyen's Facebook ID or profile. See 2025 WL 2963221, at *3 (emphasis added).

Here, the Complaint alleges similar transmission-based disclosures as in *Nguyen*. *See* ECF No. 15, ¶ 95 (First Amended Complaint) (alleging that Defendant disclosed Plaintiff Oshea's "name, email address, and physical address, and the purchase interactions she made on its website" to Meta through the Meta Pixel's "custom audience" feature).

4. Fourth, in *Haines*, the district court adopted the report and recommendation and overruled Defendant's objections that relied on the Second Circuit's construction of the ordinary person test. Specifically, the district court rejected *Solomon* as "an unbinding decision and [that] sits in stark contrast to the vast majority of federal district and circuit courts that have held the opposite about a Facebook ID." *See* 2025 WL 2045644, at *3.

5. Fifth, the *Cochenour* decision is directly instructive because it (1) involves similar Meta Pixel allegations, (2) considered and rejected a standing argument almost identical to the one before this Court in Defendant's motion to dismiss, (3) refused to adopt the ordinary person

standard (which Plaintiffs argue is the proper course of action by this Court). Regarding the latter two points, the court in *Cochenour* rejected the very arguments that Defendant now raises by explaining:

a. Defendant makes two main arguments about Plaintiff's alleged injury. First, Defendant argues that Plaintiff has not alleged that private information was disclosed—because the fact of Plaintiff's MLO licensure, and therefore the fact that she consumes continuing education materials required by that licensure, are public. . . Second, Defendant argues that even if Plaintiff has alleged that her private information was captured and shared by Meta Pixel, her alleged harm is intangible and does not have a sufficiently "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." . . . **The Court finds that, at this stage, Plaintiff has sufficiently alleged that titles and contents of the videos she purchased were private information.** The fact of Plaintiff's licensure is undoubtedly public, and MLO licensure does appear to require continuing education under Pennsylvania law. *See* 7 Pa. Cons. Stat. § 6131.1(d)(1). **However, it is not apparent at this stage that the mere fact that Plaintiff had to consume content that satisfied her licensure requirements means that the specific content she consumed was public information, nor where she obtained that content, nor in what form. In other words, Defendant has not shown that Plaintiff in fact had to watch the specific videos that she purchased from Defendant in order to keep her license**. As a result, construing all evidence in favor of the non-moving party, Plaintiff has alleged that her private information was disclosed. **Given that Plaintiff has sufficiently alleged that her private information was disclosed, the Court likewise finds that Plaintiff has pled an injury that is sufficiently concrete to satisfy the requirements of *Spokeo* and *TransUnion***. *See* **Exhibit E** at 9–11.

b. Defendant argues that it is not a VTSP because it is in the business of providing training courses, not videos: "any videos are secondary to Mortgage Educators' business of providing continuing education courses." (Reply, Dkt. 13, at 8). **However, even if Defendant defines the primary purpose of its business as providing education materials, it is undisputed that those materials include videos, and the Defendant's business includes the sale of those videos**. *See id.* at 8 (rejecting defendant's comparison of its business model to the business model in *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221–2 (C.D. Cal. 2017) and finding that plaintiff satisfied that standard).

Here, the Defendant admits, and the First Amended Complaint alleges, that the materials at issue include videos, and Defendant's business involves selling those videos (facts on which the *Cochenour* court based its ruling). *See* ECF No. 15, ¶¶ 1, 64, 81.

6. Defendant's Notice concerning *Banks v. CoStar Realty Information, Inc.* should be rejected because it is completely inapposite. *See* ECF No. 34. Defendant omits that the court in *Banks* concluded that the defendant was not a "video tape service provider" because the defendant was "in the business of connecting property owners and renters, not the delivery of prerecorded video materials similar to video cassette tapes." 2025 WL 2959228, at *4 (E.D. Mo. Oct. 20, 2025). Here, the First Amended Complaint alleges no non-video aspects to Defendant's business model. The First Amended Complaint also details the specific information conveyed by the Meta Pixel ID code, the custom audience feature, and explains how both the ID code and custom audience identify each Plaintiff, unlike the complaint in *Banks*. *See* 15, ¶¶ 1, 64, 81; *Lee v. Plex, Inc.*, 773 F.Supp.3d 755, 772–73 (N.D. Cal. 2025) (evaluating analogous allegations and finding a plausible VPPA claim existed from Meta Pixel disclosures). Therefore, the *Banks* holding is inapplicable to the facts before this Court.

7. Defendant's Notice concerning *Mull v. Gotham Distributing Corp.* is similarly misplaced. In *Mull*, the court dismissed VPPA claims ***without prejudice,*** premised on disclosures of Facebook IDs alone, which failed to satisfy the 'ordinary person' standard adopted by the Third Circuit. *See* No. 2:24-CV-06083, 2025 WL 2712215, at *5 (E.D. Pa. Sept. 22, 2025). But *Mull* only underlines how the disclosures here are sufficient under any standard. The court in *Mull* **denied** the defendants' motion to dismiss VPPA claims with respect to allegations that the defendants sold the plaintiff's "personal information and video buying history via a mailing list." *Id*. at 6. The allegations regarding the mailing list concerned a "data card" advertised for sale

online which advertised the sale or rental of the sale or rental of a "mailing list" which was alleged to have included "each person's **name** and **address** as well as the **particular prerecorded audio-visual product(s) they purchased** from Defendants' website." *Id*. (emphasis added). That is akin to the allegations here regarding Defendant's use of the Meta Pixel's "custom audience" feature. *See* ECF No. 15, ¶ 95 (alleging that Defendant disclosed Plaintiff Oshea's "**name**, **email address**, and **physical address**, and **the purchase interactions she made on its website**" to Meta through the Meta Pixel's "custom audience" feature). Defendant's reliance on *Mull* fails for another reason— it involved allegations pertaining to a joint venture between a distributing company, its warehouse, and a newly formed entity. Here, the First Amended Complaint primarily attributes all unlawful conduct to the Defendant, allegations which must be accepted as true at this stage.

Dated: November 5, 2025

Respectfully submitted,

**HEDIN LLP**

/s/ *Elliot O. Jackson*
Elliot O. Jackson
MO Reg. No. #1034536FL
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
ejackson@hedinllp.com

*Counsel for Plaintiffs and Putative Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 5, 2025, the foregoing was filed electronically using the Court's CM/ECF system, which will serve a copy upon all parties of record.

*/s/ Elliot O. Jackson*