IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| TRACEY DAMRAU, et al., | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) ) No. 4:24-CV-01441-JMD |
| COLIBRI GROUP, LLC., | ) ) |
| *Defendant*. | ) ) ) ) |

**MEMORANDUM AND ORDER**

Tracey Damrau and Danielle Oshea seek to bring a class-action suit against Colibri Group for alleged violations of the Video Privacy Protection Act, 18 U.S.C. § 2710. Colibri moved to dismiss, arguing (among other things) that that Act applies only to entertainment videos, not educational videos. But the Act says no such thing. And none of their other arguments prevail, either. The motion to dismiss is **DENIED**.

**Background**

Damrau and Oshea allege that they purchased subscriptions to view prerecorded videos on certain websites. The materials include videos that satisfy continuing education requirements for people in various industries. After the plaintiffs purchased access to the videos, the websites transmitted certain information about the purchases to social media giants Meta and TikTok, such as the titles of the subscriptions purchased and the product codes. Colibri allegedly transmitted the data by installing programming code called "pixels" on its websites. Pixels transmit to Meta and TikTok information about customers' purchases and information needed to match the customers to their social media accounts. *Id*. at 1–4.

1

This identifying information included the plaintiffs' phone numbers and advertising identifiers called "Facebook IDs." All this occurred without the plaintiffs' consent. ECF 15.

Colibri allegedly controls and maintains the websites. Colibri collectively refers to the different companies it governs as the "Colibri Group portfolio of companies and brands." Each website says it is "part of the Colibri Group portfolio of companies and brands." And all privacy questions are directed to the same Colibri email: privacy@colibrigroup.com.

Colibri moved to dismiss for failure to state a claim.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).

On a motion to dismiss, the Court accepts all the factual allegations contained in the complaint as true, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief, *id.* at 555–56; Fed. R. Civ. P. 8(a)(2). "This tenet does not apply, however, to legal conclusions or formulaic recitation of the elements of a cause of action; such allegations may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588

2

F.3d 585, 594 (8th Cir. 2009) (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (cleaned up). The facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## Analysis

Enacted one year after a video store leaked the video rental history of Judge Robert Bork, the Video Privacy Protection Act provides a civil remedy when a "video tape service provider [] knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Damrau and Oshea say that Colibri is liable for disclosing their personally identifiable information to Meta and TikTok.

Moving to dismiss, Colibri presses three points: 1) the plaintiffs sued the wrong defendant, 2) the Act applies only to "entertainment" media (not educational videos), 3) and the plaintiffs fail to plead disclosure of personally identifiable information.[1] All arguments fail.

## I

Colibri first argues that parent companies are not liable for the decisions of their subsidiaries, so Colibri is the wrong defendant. But Colibri acknowledges that it can be held liable if it has sufficient control over the companies operating the websites. Control often is

---

[1] The Act permits disclosure if the consumer provides informed, written consent. Colibri mentions (in a footnote) that Damrau and Oshea had notice of the disclosure because the websites had cookie policies linked on their respective homepages. ECF 17 at 13. But Colibri never contends that this notice was sufficient under the Act, which requires that notice be highly conspicuous. Among other things, the notice must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," and the company must create "an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 USC § 2710(2)(B).

3

a "fact-intensive inquiry that cannot be resolved at the motion to dismiss stage." *Sigma-Aldrich Co., LLC v. Quantabio, LLC*, No. 4:22-CV-00090-JAR, 2023 WL 2645651, at \*6 (E.D. Mo. Mar. 27, 2023). The Court agrees with the plaintiffs that the allegations in the complaint are adequate to infer sufficient control over the privacy actions of the companies. For example, the complaint says 1) "Defendant maintains control over and governs the Websites by requiring that each website follow the same uniform policies," and 2) disputes about "all matters concerning privacy" are "direct[ed]" to a single email location common to all websites under Colibri: privacy@colibrigroup.com. Compl. ¶¶ 37, 82. The Court cannot resolve this factual dispute on a motion to dismiss.

## II.

No better is Colibri's assertion that the Video Privacy Protection Act applies only to entertainment videos, not educational videos. Colibri focuses on the phrase "video tape service provider," which is defined as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." § 2710(a)(4). Relying substantially on legislative history, Colibri argues that Congress intended for "video tape service provider" to encompass only "movies" that are "entertainment," not videos like Colibri's created for education. ECF 17 at 15.

But this Court must focus on the text and will not rely on legislative history. *See Wooden v. United States*, 595 U.S. 360, 381 (2022) (Barrett, J., joined by Thomas, J., concurring) ("[T]he problems with legislative history are well rehearsed."). And nowhere does the text of the Act differentiate based on whether a video is primarily for the purpose of entertainment or instead for education. *See, e.g.*, *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 719 (N.D. Cal. 2023) (holding that the length and subject matter of short,

4

education-focused videos is not "relevant to determining coverage by the [Act]"). When the Act was passed, brick-and-mortar video rental stores were common. Under the plain text, the Act protected information about all video rentals, regardless of whether a person rented *James Bond* or the documentary *Nature*.

Colibri makes no other material argument about the term "video tape service provider." Although it might sound strange at first glance in the digital age to describe an online video distributor as a "video tape service provider," even Colibri does not deny that the Act applies to digital media distributed over the internet. When Congress enacted the statute, video cassette tapes were a common—if not predominate—vehicle for delivering video recordings. But Congress anticipated changes in technology and said the Act would apply to "prerecorded video cassette tapes *or similar* audio visual materials." § 2710(a)(4) (emphasis added). Americans' privacy in their video rentals did not cease when Blockbuster shifted from video cassettes (analog) to DVDs (digital). And Americans did not lose privacy protections when companies like Blockbuster went defunct and companies like YouTube and Amazon began delivering rentals over the internet—encoding data quickly and directly onto a consumer's personal device—rather than through brick-and-mortar stores.

Focusing on the word "materials," the Eighth Circuit recently held that the Act applies only to media items that "have a physical existence." *Christopherson v. Cinema Ent. Corp.*, 161 F.4th 525, 528 (8th Cir. 2025). Videos delivered over the internet for at-home consumption satisfy that standard. Video data must be encoded and stored (even if temporarily) onto a physical device to operate. In the 1980s, the physical device onto which data was encoded often was a video cassette. Today, it is more likely to be the drive or memory storage device on a consumer's phone, laptop, or smart TV. But it still has a physical

5

manifestation. It is thus not surprising that the Supreme Court regularly uses the phrase "material on the Internet." *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 208 (2003); *Reno v. Am. C.L. Union*, 521 U.S. 844, 853 (1997) (same); *Ashcroft v. Am. C.L. Union*, 535 U.S. 564, 567 (2002) (same); *see also Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 467 (2025) (describing a statute that applies to any entity that "knowingly and intentionally publishes or distributes [certain] material on an Internet website"); *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 17 (2020) (Thomas, J., respecting denial of certiorari) (describing statute protecting "Internet company's discretion to take down material"). No doubt, video rentals online differ from 1980s-style video cassettes. But they are sufficiently "similar." *Christopherson*, 161 F.4th at 528 ("similar" means "having characteristics in common: very much alike"). The change in delivery—from analog, to digital, to digital distributed over the internet—does not erase the protections Congress gave to Americans. Although the speed and quality of a video rental from YouTube or Amazon today is much better than a video rental on a cassette tape in the 1980s from Blockbuster, the business models are "similar" under the Act. Both entail rentals of prerecorded video. It is merely the mode and speed of delivery that has changed.

That makes this case far different from *Christopherson*, which involved a suit against a company operating a movie theater. Although "[m]ovies underpin both" theaters and video rentals, "the similarities end there." *Christopherson*, 161 F.4th at 528. Unlike a movie in a theater, a video rental can be "played on a home recorder; watched, rewatched, paused, rewound, and fast forwarded; and shared with family and friends." *Id*. So too here. These videos are accessible from home (where they can be viewed by multiple people), and nothing in the complaint suggests that the user lacks some modicum of control over how to play,

6

pause, or rewind the videos. Congress in the 1980s could not have had in mind the internet of today, but "if Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators," *Barr v. United States*, 324 U.S. 83, 90 (1945).

### III.

No matter, Colibri says, the Act applies only when a company discloses "personally identifiable information," § 2710(b)(1), and Colibri believes the information here does not count. Colibri says the information disclosed to Meta and TikTok was not "personally identifiable" because an ordinary person could not read the "coding gobbledygook" sent by the pixels. The Court disagrees.

Under the Act, "personally identifiable information" includes "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." § 2710(a)(3). Thus, two types of information must be disclosed for the Act to apply: 1) information that makes the person "identifiable," and 2) specific information about the materials or services a consumer requested. Damrau and Oshea sufficiently allege that both were disclosed.

First, they allege that the pixels transferred identifiable information. They allege that their phone numbers and unique Facebook ID numbers were disclosed. This kind of data can identify a person. Federal healthcare regulations state that personal "identifiers" include things like "[t]elephone numbers," "[a]ccount numbers," and "Internet Protocol (IP) address numbers," 45 C.F.R. § 164.514(b)(2)(i), the latter two of which are similar to a unique Facebook ID number. Damrau and Oshea also allege that a person can easily use the

7

Facebook ID number to identify a person simply by entering the following URL into a web browser: "Facebook.com/[insert Facebook ID]."

Colibri says this is not enough. In support, Colibri cites a test not used in this circuit that requires that an "ordinary person [be able] to identify a specific individual's video-watching behavior." ECF 17 at 12 (citing *In re Nickelodeon Consumer Priv. Litig.,* 827 F.3d 262, 290 (3d Cir. 2016)); *see also Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 985 (9th Cir. 2017); *Solomon v. Flipps Media, Inc.,* 136 F.4th 41, 52 (2d Cir. 2025), *cert. denied,* No. 25-228 (Dec. 8, 2025). The First Circuit uses a different judicially created test that looks at whether the "information [is] reasonably and foreseeably likely to reveal" the person and the videos obtained. *Yershov v. Gannett Satellite Info. Network, Inc.,* 820 F.3d 482, 486 (1st Cir. 2016). Colibri argues that the information here is "gobbledygook" that an ordinary person could not interpret. But Damrau and Oshea allege that an ordinary person can identify a person merely by appending their Facebook ID to a short URL. It is not difficult for an ordinary person to run an internet search of a phone number to discover its owner. And in any event, even if this kind of data were not sufficiently identifiable in the past, "modern technology may indeed alter—or may already have altered"—what can identify a person today. *Eichenberger*, 876 F.3d at 986.

Both tests described above also "are unnecessary and appear to be extra-textual." *Banks*, 2025 WL 2959228 at *6. The statute does not let companies distribute information so long as they encrypt it first. It is the *transfer* of protected information to the receiver that the Act prohibits, regardless of the manner of transmission. "Applying [Colibri's] logic to the Judge Bork case would mean that the video store would be free to disclose Judge Bork's rental history so long as the store matched that history with an ID number . . . instead of with the

8

judge's name." *Manza v. Pesi*, 784 F. Supp. 3d 1110, 1120 (W.D. Wis. 2025).  Video tape service providers cannot "skirt liability under the VPPA . . . by disclosing a unique identifier and a correlated look-up table." *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344 at *11 (N.D. Cal. Apr. 28, 2014).  To hold otherwise would be to allow video tape service providers an unlimited loophole, rendering the statute pointless.

Second, Colibri disputes that it disclosed specific information about the materials or services the plaintiffs purchased.  It contends that disclosing a consumer's purchase of a *set* of materials is not covered by the Act; only the purchase of a single video is covered.  Again, that argument finds no support in the text.  The statute says "specific *materials or services*," not "specific *video titles*."  Under Colibri's argument, the Act would fail to protect any person who rented a consolidated trilogy or an entire season of a sitcom rather than a single episode or single film.

In any event, Damrau and Oshea did allege that Colibri disclosed specific titles; they simply did not specify each disclosed title, preferring to give examples instead.  ECF 15 at 7, 10.  Colibri's position "improperly conflates . . . requiring plaintiffs to allege the fact that specific titles were disclosed with . . . requiring that they identify the actual titles that they allege were disclosed." *Martinez v. D2C, LLC*, No. 23-21394-CIV, 2023 WL 6587308 at *3 (S.D. Fla. Oct. 10, 2023).

9

Because Damrau and Oshea have alleged a sufficient claim under the Video Privacy Protection Act, Colibri's motion to dismiss is **DENIED**.

**IT IS HEREBY ORDERED** that Colibri's motion to dismiss, ECF 16, is denied.

Dated this 23rd day of January, 2026

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE